## OWINGS v. NORWOOD'S LESSEE.

In an action of ejectment between two citizens of Maryland, for a tract of land in Maryland, if the defendant set up an outstanding title in a British subject which he contends is protected by the treaty, and therefore the title is of the plaintiff; and the highest state court in Maryland decides against the title thus set up; it is not a case in which a writ of error can lie to the supreme court of the United States.

It is not "a case arising under a treaty." The judiciary act must be restrained by the constitution of the United States.

ERROR to the court of appeals of Maryland, being the highest court of law and equity in that state, in an action of ejectment brought by the defendant against the plaintiff in error, both parties being citizens of Maryland, for a tract of land in Baltimore county, called "The Discovery," being part of a tract of land called Brown's Adventure, originally patented for 1,000 acres to Thomas Brown, in the year 1695, who conveyed to John Gadsby, who conveyed to Aaron Rawlins in 1703, who mortgaged in fee to Jonathan Scarth, a London merchant, by deed of bargain and sale, in 1706, with a proviso to be void upon payment of 800l. sterling, with interest, on the 13th of May, 1709. Scarth and his heirs were always British subjects resident in England, and never were in Maryland; but Scarth was charged with the quit-rents, in the Lord Proprietor's debt-books, up to the time of the revolution. Rawlins, however, by his will, in 1741, devised the land specifically to some of his children, without taking any notice of the mortgage. In 1732, Littleton Waters attached, and obtained judgment of condemnation against the land, for a debt due to him from Scarth, but never took out any execution upon the judgment; and by deed of lease and release assigned all his right in the land to the Baltimore company, under whom the plaintiff in error claims.

In October, 1794, Norwood obtained an escheat warrant to affect the tract called Brown's Adventure, upon suggestion of a defect of heirs of Brown, the original patentee. In June, 1800, he obtained a patent from the state founded upon the proceedings under that warrant, for 520 1-2 acres, being part of Brown's Adventure, with an addition of 26 acres of vacant land, and thereupon brought his action of ejectment against Owings. Upon the trial the original defend-

ant, in order to show an existing title out of the
plaintiff, contended that the mortgage to Scarth was
protected from confiscation by the British treaty of
1794, and was still a security for the money to the
representatives of Scarth, who were proved to be still
living in England. " But the court were of opinion
that on the expiration of the time limited in the
mortgage for the payment of the money, a complete
legal estate of inheritance vested in the mortgagee
liable to confiscation; and was vested in the state by
virtue of the act of confiscation of *October session,*
1780, c. 45. and the act of the same session, (c. 49.)
(*to appoint commissioners*,) subject to the right of
redemption in the mortgagor and his heirs, and that
the British treaty cannot operate to affect the plain-
tiff's right to recover in this ejectment."

OWINGS.
v.
NORWOOD'S
LESSEE.

The verdict and judgment of the general court
being affirmed in the court of appeals of Maryland,
and being against the right claimed under the treaty,
Owings sued out his writ of error under the provi-
sions of the 25th section of the judicary act, *vol.* 1.
*p.* 63. which enacts, that a final judgment in the
highest court of a state, in a suit " where is drawn
in question the construction of any clause of a treaty,
and the decision is against the right claimed under
such clause of the treaty, may be re-examined and
reversed or affirmed in the supreme court of the
United States."

*Harper*, for the plaintiff in error.

The question in this case is, whether Scarth's in-
terest in the land was protected by the treaty of
peace with Great Britain. By the 5th article of tha
treaty " it is agreed that all persons who have any
interest in confiscated lands, either by *debts*, marriage
settlements, or otherwise, shall meet with no lawful
impediment in the prosecution of their just rights."
The case of *Higginson and Mein*, decided by this
court, (*ante, vol.* 4. *p.* 415.) was, in substance, the
same as this. In both, the time of payment had
passed before the confiscation; and the legal estate

was in a British subject. The court in that case de-cided that the confiscation did not destroy the lien which the British creditor had in the land under the mortgage.

LIVINGSTON, J. Could the mortgagor, sixty or seventy years after the time of payment, maintain a bill to redeem?

*Harper.* The mortgagee never was in possession of the land; the lapse of time, therefore, would rather operate as a bar to foreclosure than redemption.

*Ridgely,* contra.

By the act of assembly of Maryland, passed at October session, 1780, *c.* 45. and *c.* 49. all the property in that state belonging to British subjects, *except debts.* was confiscated and *vested* in the state, without inquest of office, or entry, or any other act to be done. The statute operated a complete change of property and possession.

This was not at that time a debt due to Scarth. Nearly a century had elapsed since the mortgage was forfeited. There was no covenant in the mortgage for payment of the money; no bond taken, or other evidence of a debt. Rawlins never took any measures to redeem, but abandoned the pledge, as an absolute sale. It is a general principle in equity that the mortgagor shall not redeem if the mortgagee has been in possession twenty years after forfeiture of the mortgage. It was not necessary for Scarth to file a bill to *foreclose;* because the right to redeem was barred by his twenty years' possession. If Rawlins could not have redeemed in 1780, the estate was absolute in Scarth, and the confiscation was complete. There is no case in England, or Maryland, where the mortgagor has been permitted to redeem after twenty years, if no interest has been paid, or account kept between the parties. *Pow. on Mort.* 152. 3 *P. Wms.* 287. 2 *Atk.* 496. 2 *Vern.*

418. 3 *Bac. Abr.* 655. 1 *P. Wms.* 272. 15 *Vin.* OWINGS
467.

V<br>NORWOOD'S<br>LESSEE.

But if Scarth's heirs might avail themselves of the treaty, it is not competent for a third person to set it up. Or if it is, it will not give this court jurisdiction.

*Johnson, Attorney-General of Maryland,* on the same side

If the judgment below be not against a right claimed under the treaty, if it be not a case arising under the treaty, this court has no jurisdiction.

In this case Owings claims no right under the treaty. Scarth's right, whatever it may be, is not affected by the decision of this case. It is he only who could claim the benefit of the treaty. But he is not a party in the suit. It is, therefore, not a case arising under the treaty.

MARSHALL, Ch. J. There are only two points in this case.

1. Whether Scarth had such an interest as was protected by the treaty; and,

2. Whether the present case be a case arising under a treaty, within the meaning of the constitution.

This court has no doubt upon either point.

The interest by debt intended to be protected by the treaty, must be an interest holden as a security for money at the time of the treaty; and the debt must still remain due.

The 25th section of the judiciary act must be restrained by the constitution, the words of which are, " all cases arising under *treaties.*" The plaintiff in error does not contend that his right grows out of

OWINGS
v.
NORWOOD'S
LESSEE.

the treaty. Whether it is an obstacle to the plaintiff's recovery is a question exclusively for the decision of the courts of Maryland.

*Harper,* on the next day, having suggested to the court that he understood the opinion to be that this court had no jurisdiction to revise the decisions of the state courts, in cases where the construction of a treaty was drawn in question *incidentally,* and where the party himself did not claim title under a treaty, was about to make some further observations on those points, when

MARSHALL, Ch. J. observed, that Mr. Harper had misunderstood the opinion of the court, in that respect. It was not that this court had not jurisdiction if the treaty were drawn in question *incidentally.*

The reason for inserting that clause in the constitution was, that all persons who have real claims under a treaty should have their causes decided by the national tribunals. It was to avoid the apprehension as well as the danger of state prejudices. The words of the constitution are, " *cases arising under treaties.*" Each treaty stipulates something respecting the citizens of the two nations, and gives them rights. Whenever a right grow s out of, or is protected by, a treaty, it is sanctioned against all the laws and judicial decisions of the states; and whoever may have this right, it is to be protected. But if the person's title is not affected by the treaty, if he claims nothing under a treaty, his title cannot be protected by the treaty. If Scarth or his heirs had claimed, it would have been a case arising under a treaty. But neither the title of Scarth, nor of any person claiming under him, can be affected by the decision of this cause.

*Harper.* The opinion is more limited than I apprehended. But in this case the land is claimed as confiscated, and the question is, whether the plain-

tiff's title, by confiscation, is good under the treaty. The defendant has a good title against every body who cannot show a better. He has a right to protect himself, by showing that the plaintiff has no title. In order to do this, he insists that the title of the plaintiff is inconsistent with the treaty. He has a right to set up the treaty in opposition to the confiscating act of Maryland.

*Martin*, on the same side.

The reason of the clause in the constitution was, that there might be uniformity of decision upon all questions arising upon the construction of the constitution, and laws and treaties of the United States. In every case, the question concerning a treaty must come on incidentally. The intention was, that wherever a state court should decide against a claim, set up under the construction of a treaty, such decision should be examinable in this court.

This was the cotemporaneous exposition given to the constitution by the first congress, convened under that constitution, and which was composed of a great number of the leading members of the convention by which the constitution was framed; and who must have well known what was the intention of that body in adopting that article.

The right of the plaintiff to recover in this suit, and the right of the defendant to retain the possession as against this plaintiff, depend upon the treaty.

The property having been once granted, the state could not again acquire the title but by escheat or confiscation. The court below decided, that it was not a case of escheat, because the heirs of Scarth were living. Whether the property was confiscated within the meaning of the treaty, is therefore the only remaining question, upon the merits of the case. That question, however, is not before this court, until this court shall decide whether they are

competent to consider it in this case. We consider the judiciary act as a correct exposition of the constitution in this respect, and that this is clearly a case within the provisions of the 25th section of that act.

This argument produced no alteration in the opinion of the court; and the

Writ of error was dismissed.*

*. As this cause occupied a considerable portion of the time and talents of the courts and bar of Maryland, and as it decided several important points in that state, it is deemed not improper to give a short abstract of the case as it appears in the bills of exception.

Upon the trial, the defendant Owings took 10 bills of exception.

The 1st bill of exceptions stated that the plaintiff offered in evidence a patent from the lord proprietor of Maryland to Thomas Brown, dated November 10, 1695, for a tract of land called Brown's Adventure, containing 1,000 acres. Also a patent from the state of Maryland to Edward Norwood, the original plaintiff in this action, dated 25th June, 1800, for a tract of land called "The Discovery," containing 520 1-2 acres, included within the lines of Brown's Adventure   The defendant offered evidence that the heirs of Brown, the original patentee, were still living in Maryland. The defendant offered in evidence a deed from Brown to Gadsby, dated May 2, 1700, on which was an endorsement dated May 4, 1699, purporting to be a receipt for the alienation fine due to the lord proprietor. And the following "Memorandum: That the date of this was originally according to the date of the above receipt, but aliened by consent of the provincial court and parties, to bring it within the act of assembly.

"W. TAYLARD."

Whereupon the defendant prayed the court to instruct the jury that if they were of opinion that the endorsements were made at the request of Gadsby the grantee, and with his privity and consent, and that the deed with the endorsements was recorded for his benefit, and with his assent, then the endorsements are competent to be read in evidence to support the facts therein contained against the title of Gadsby to the lands in the deed mentioned. But the court was of opinion that the memorandum of *Taylard* "was not evidence, *being an act done by the said W. Taylard without authority,* and that the said deed was valid and operative in law to transfer the said land to the said Gadsby."

The 2d bill of exceptions states that, in addition to the above evidence, the plaintiff offered in evidence a deed from Gadsby to Barker, for 130 acres, part of Brown's Adventure, dated 10th of July, 1701. Also a deed from Gadsby to Aaron Rawlins of the residue of Brown's Adventure, dated 2d of October 1703. Also a deed of mortgage in fee from Rawlins to Jonathan Scarth, dated the 13th of May, 1706. He also offered evidence that Barker and Scarth died before 1795, without heirs. Also an *escheat* warrant to the plaintiff, dated 28th of October, 1795, and a certificate of resurvey, and a patent thereupon to the plain-

## MOSS v. RIDDLE & CO.

· ERROR to the circuit court for the district of Columbia, in an action of debt upon the joint bond of Welsh and Moss for the payment of money.

.Welsh, who was the principal debtor, not being found in, and not being an inhabitant of, the district of Columbia, the suit abated as to him.

. The defendant Moss, in his *first* plea, after pro-

*A bond can- not be delive- red to one of the obligees. as an* escrow. *Fraud con- sists in inten- tion; and that intention is a fact which must be aver- red in a plea of fraud.*

tiff, dated 25th of June, 1800  The plaintiff also offered evidence, that the lands are truly located on the plats as directed by the plaintiff. The defendant offered evidence that the heirs of Brown were still living in Maryland; that Scarth's heirs are still living in England, and that he and his heirs were always British subjects, and always re- sided in England

The court had directed the jury that if the heirs of Scarth were living in England at the passage of the acts of *October session*, 1780, *c.* 45 *c.* 49. *and c.* 51. the warrant of escheat which issued to the plain- tiff, issued without authority of law, but that a patent which issued on such a warrant came within the provision of the act of *November ses- sion*, 1781, *c.* 20 *s.* 8. whereupon the defendant offered in evidence the valuation of the land so escheated by the plaintiff, and the sum by him paid into the treasury for the said lands on the 24*th of Decem- ber*, 1799, and that the sum so paid, was only two thirds of the appraised value of the said lands so escheated, and prayed the direc- tion of the court, that if the jury should be of opinion that the plaintiff had paid only two thirds of the appraised value, he could not entitle himself to the benefit of the warranty contained in the act of *Novem- ber*, 1781, *c.* 20. *s.* 8  "But the court were of opinion, that if the jury should find the facts as stated, the said patent was good, valid and operative in law to pass the said land to the said Edward Norwood and his heirs, and so directed the jury," notwithstanding the said Edward Norwood had not paid more than two thirds of the appraised value of the said land.  The court considering the case of the said Edward Norwood as coming fully within the provision of the 8*th sect* of the act of *November session*, 1781, *c.* 20.  and that the two thirds of the value of the said land was as much as the said Edward Norwood was liable to pay ; to which last opinion, and to so much of the former opinion as declares the said patent to come within the provisions of the act of *November*, 1781, *c.* 20. § 8  the defendant excepted."

The 3d bill of exceptions, in addition to the foregoing evidence, stated, that the defendant offered evidence of a judgment of condemna- tion of these lands upon an attachment from the provincial court in 1732, for a debt of 397*l* 9*s.* 6*d.* sterling, due from Scarth to one Little- ton Waters.  The plaintiff offered in evidence duplicate writs of at- tachment to other counties issued by Waters for the same debt, upon which sundry sums of money were attached and condemned in the hands of garnishees, amounting altogether to 226*l.* 8*s.* 4*d.* sterling.

Moss
v
Riddle.

testing that he did not deliver to any person, un-
conditionally, as his act and deed, the writing in the
declaration mentioned, averred that he signed and

To show that the lands attached by Waters was the 386 acres lo-
cated on the plats as being in the possession of the Baltimore company,
the plaintiff read in evidence the lord proprietor's old rent-roll, stating
870 acres to be in possession of Rawlins, and 130 in the possession of
John Barker. And the last rent-roll stating 419 acres to be in possession
of Scarth, and 385 in the possession of Charles Carroll & Co.; and the
lord proprietor's debt-book for the year 1754, (being the oldest book of
that kind remaining,) which charges the Baltimore company with the
quit-rents of 386 acres and no more, and Scarth with 419; which char-
ges were continued annually until the revolution And the defendant
thereupon prayed the opinion of the court, that by virtue of the said
judgment and attachment and condemnation by him given in evidence,
a legal estate was vested in the said Littleton Waters in the said tract
of land called Brown's Adventure. But the court were of opinion, and
so directed the jury, that the said Littleton Waters did not acquire a
legal estate in the said land by virtue of the said judgment, attachment
and condemnation.

The 4th bill of exceptions stated the same facts, and further that
the defendant read the act of assembly passed at November session,
1797, c. 119. and prayed the opinion of the court, that by virtue of that
act the right of the state was so far vested in the persons possessing
the land called Brown's Adventure under the condemnation aforesaid,
that the plaintiff could not in virtue of his said warrant, certificate and
patent have any right or title to the said land ; or, if any, then no more
than the proportion or compensation to which a discoverer of confis-
cated property is entitled. But the court were of opinion that the
right of the plaintiff to Brown's Adventure attached upon his obtaining
the warrant of escheat, and that his right was saved and protected by
the proviso in the 2d section of the said act of November, 1797, c. 119.
And that the grant transferred to him the interest the state had in the
land called " *The Discovery*" from the time of his obtention of his said
warrant of escheat.

The 5th bill of exceptions states the same facts, whereupon the
defendant prayed the opinion of the court, and their direction to the
jury, that if the warrant of escheat which issued in this case, issued
without authority of law, then the warranty contained in the act of
November, 1781, c. 20. § 8 did not operate to give title to the plaintiff,
and that there can be no relation to a warrant which issues without
authority of law, or to a certificate made in pursuance of such warrant.

But the court were of opinion, that the act of 1781, c. 20. § 8. did
secure to the plaintiff the said land so by him escheated on his paying
two-thirds of the value of the said land, being what the plaintiff was
liable to pay for the same as confiscated British property ; and that
the grant obtained by the plaintiff did operate to pass the land to him
by relation from the date of the said warrant.

The 6th bill of exceptions also stated the same facts, and that the
defendant thereupon prayed the court to direct the jury that if the
said tract of land called Brown's Adventure belonged to a British sub-
ject at the time of passing the act for confiscating British property in
the state of Maryland, and if no actual possession had been taken
thereof by the said state or its agents, and no sale or disposition made

sealed the same, and delivered it to *Joseph Riddle*, one of the plaintiffs, *as an escrow*, to be his act and deed, on condition that the same should afterwards

Moss
v.
Riddle.

thereof by the state to any person at any time before the treaty between the United States and Great Britain dated the 19th of November, 1794, took effect, the plaintiff could make no title thereto by his said warrant, certificate and patent.

But the court refused to give that direction to the jury, being of opinion, that the state of Maryland, by their commissioners, was in possession of all British property within the limits of the said state, under and by virtue f the act of confiscation, October, 1780, c. 45. and the act of the same session, c. 49. to appoint commissioners, &c. And that the possession of the said land was in the state of Maryland at the time the plaintiff obtained his escheat warrant; and that no British subject could hold land in the state of Maryland on the 19th of November, 1794, the time when the treaty was entered into between the United States and Great Britain.

The 7th bill of exceptions, in addition to the facts before mentioned, stated, that the defendant offered evidence that the heirs of Rawlins were still living in Maryland. That Rawlins, in the year 1741, made his will and devised Brown's Adventure by name to some of his children. That the heirs of Littleton Waters are still living in Maryland. That the Baltimore company, under whom the defendant claims, have been for fifty years past in the actual possession and user of the whole land called Brown's Adventure, by clearing and cutting the wood off the said land for their iron works, and claiming the said land; and that there has been no actual or mixed possession of any part of the said land by *Scarth*, or by any person claiming under him, or by any person claiming adversely to the Baltimore company. Whereupon the defendant prayed the court to direct the jury, that if they find the facts stated by the defendant to be true, and that no payment of principal or interest due on the said mortgage, or acknowledgement of the said mortgage, was at any time paid, made or done, on or after the 13th of May, 1709, the jury may and ought to presume the said mortgage satisfied before the year 1780, and that the plaintiff is not entitled to recover. But the court were of opinion that the facts stated in the above case will not warrant the jury in presuming the said mortgage was satisfied before the year 1780, and refused to give the direction prayed.

The 8th bill of exceptions states the same facts, and that the defendant further prayed the court to direct the jury, that if the facts are found true as stated by the defendant, the act of confiscation of October session, 1780, c. 45. and c. 49. vested no beneficial interest in the state of Maryland in the lands in the mortgage from Rawlins to Scarth, but that the same, if it vested in the state under the act of confiscation, was liable to the equity of redemption in the heirs of Rawlins, the mortgagor, and that by operation of the British treaty, so far as the mortgagee could claim an interest in the said mortgaged lands, the same was saved from confiscation by the said treaty, and, consequently, the lessor of the plaintiff is not entitled to recover.

But the court were of opinion, that on the expiration of the time limited in the mortgage for the payment of the money, a complete legal estate of inheritance vested in the mortgagee liable to confiscation, and was vested in the state in virtue of the act of confiscation of October session, 1780, c. 45. and the act of the same

session, c. 49. to appoint commissioners, subject to the right of redemption in the mortgagor and his heirs, and that the British treaty cannot operate to affect the plaintiff's right to recover in this ejectment, and refused to give the direction prayed.

The 9th bill of exceptions, in addition to the same facts, states, that the defendant offered in evidence a lease and release from Littleton Waters to Benjamin Tasker and others, dated June 20, and 21, 1738, of so much of Brown's Adventure as, according to a valuation upon oath returned to the provincial court, would amount to 145*l.* 1*s.* 5*d.* sterling, and thereupon prayed the court to instruct the jury, that if they find the facts as stated by the defendant, the deeds of lease and release from Waters to Tasker and others conveyed a legal title in the lands therein mentioned; and that if a legal title did not pass, then the jury may and ought to presume a title in the said Tasker and others to the whole of an undivided 386 acres of land, being an undivided part of the 870 acres of land mortgaged to Jonathan Scarth, called Brown's Adventure. But the court refused to give the direction prayed.

The 10th bill of exceptions states, that upon the same facts the defendant prayed the court to direct the jury that as to all that part of Brown's Adventure contained in the deed from Waters to Tasker and others, under whom the defendant claims, the patent granted to the plaintiff does not give him a title thereto, or enable him to recover the same, which direction the court refused to give.