### LONG ET AL. *v.* CONVERSE ET AL.

1. This court has no jurisdiction to review the decision of a State court against a right and a title under a statute of the United States, unless such right and title be specially set up and claimed by the party for himself, and not for a third person under whom he does not claim.

2. So far as it relates to the above point, sect. 709 of the Revised Statutes, which authorizes this court, in certain cases, to re-examine upon a writ of error the judgment or decree of a State court, does not differ from the twenty-fifth section of the Judiciary Act of 1789.

3. Former decisions of this court upon said twenty-fifth section cited and examined.

ERROR to the Supreme Judicial Court of the State of Massachusetts.

On the 20th of July, 1870, a bill was filed in the Supreme Judicial Court of Massachusetts for the foreclosure of a mortgage, executed by the Boston, Hartford, and Erie Railroad Company, to secure the payment of certain bonds. The bill prayed a sale of the mortgaged property, and the appointment of receivers. Henry N. Farwell was named as one of the defendants, he being one of the trustees under the mortgage, and also one of the directors of the company. Process was served upon him July 21, 1870.

On the 2d of August, 1870, an order was made appointing receivers, with authority to take possession of all the property of the railroad company, including all moneys, credits, choses in action, evidences of debt, books, papers, and vouchers.

On the 1st of March, 1871, the railroad company was adjudged a bankrupt by the District Court of the United States for the District of Massachusetts; and on the 18th of the same month an assignment of its property, according to the provisions of the Bankrupt Act, was made to Charles S. Bradley, Charles L. Chapman, and George M. Barnard, as assignees. This assignment was made to include all the property of which the company was possessed on the 21st of October, 1870.

On the 20th of September, 1871, the receivers of the railroad company filed in the Supreme Judicial Court their petition against George W. Long and John C. Watson, alleging, in substance, that, when the order appointing them receivers was made, Farwell had in his possession, as one of the officers of the railroad company, certain coupons of bonds of the Hartford, Providence, and Fishkill Railroad Company, and of bonds of the city of Providence, which were the property of the Boston, Hartford, and Erie Railroad Company, and which, by the decree, he was ordered to deliver to them; that the railroad company had no right to sell or transfer the coupons, or put them in circulation; that he had no right to the coupons or their possession; that, notwithstanding this, he had, subsequently to their appointment as receivers, transferred to Long and Watson five hundred of the coupons of the bonds of the city of Providence; and that Long and Watson, at the time, had full knowledge of the

rights of the railroad company, and that Farwell had no power or authority to make the transfer.

The petitioners asked that Long and Watson might be ordered to deliver the coupons to them, and restrained from collecting the money due thereon.

Long and Watson answered this petition, denying that Farwell, at the time of the appointment of the receivers, held the coupons in trust for the railroad company, and averring that he held them as collateral security for a debt owing to him by the Hartford, Providence, and Fishkill Railroad Company. Having no knowledge whether the Boston, Hartford, and Erie Railroad Company had authority to sell the coupons, or put them in circulation, they left the petitioners to make such proof of that fact as they might deem material. They admitted the transfer to them by Farwell after the appointment of the receivers, but denied any knowledge of the rights of the railroad company, and averred that they purchased the coupons of Farwell in good faith, believing that he had the right to make the transfer.

Subsequently, on the 27th of June, 1872, they filed an amendment to their answer, setting up the bankruptcy of the railroad company and the assignment to the assignees, and concluding as follows: " Wherefore these respondents submit that the said petitioners had not, at the date of the filing of the said petition, if they ever had, any right to the possession of any of the property of the said Boston, Hartford, and Erie Railroad Company, and particularly to the possession of the coupons in said petition alleged to be the property of the said company, and in the possession of these respondents."

The cause was referred to a special master. Upon the coming in of his report, exceptions were filed; and at the April Term, 1872, an entry was made on the docket of the court, as follows: " Plaintiffs' exceptions sustained. Decree for the receivers upon the evidence reported." The cause was then continued. On the 28th August, 1872, the assignees in bankruptcy filed in the cause a paper addressed to the court, in which they represented, that " having read . . . the proposed decree of this court against George W. Long and John C. Watson, ordering them to surrender and deliver up to the receivers

the coupons of the bonds of the city of Providence described in the petition against them, we do assent to said decree, and to the delivery of the coupons to the receivers, as therein ordered."

Afterwards, on the 5th of May, 1873, a decree in form was entered by the court, in which it was "found as a matter of fact, and further ordered, adjudged, and decreed, that the respondents, George W. Long and John C. Watson, took the interest coupons sought in this petition to be recovered of them, to wit, &c., under circumstances which preclude said Long and Watson from claiming the right of holders for value in good faith; and that, as against the petitioners in said petition, said Long and Watson acquired no better title to said coupons than Henry N. Farwell himself had, and that said Farwell had no right or title to the same; and that the right to the possession of and the title to said coupons are now in the petitioners, . . . notwithstanding the amended answer of said defendants and the alleged adjudication in bankruptcy and subsequent assignment made therein." Thereupon it was further decreed that the receivers recover of Long and Watson the money which it appeared they had collected during the pendency of the suit from the city of Providence upon the coupons received by them from Farwell.

To reverse this decree, the present writ of error has been prosecuted by Long and Watson.

The error assigned is, that the court below held that the right and title to the coupons in controversy were in the defendants in error, as receivers of the Boston, Hartford, and Erie Railroad Company; and that they were entitled to maintain suit to recover the same, notwithstanding the adjudication of the bankruptcy of that company, and the assignment of all its property by register in bankruptcy to assignees in bankruptcy before suit brought by the defendants in error.

*Mr. Benjamin F. Butler,* with whom was *Mr. Causten Browne,* for the plaintiffs in error.

*First,* The question presented by the assignment of error is one within the jurisdiction of this court.

1. This was a final decree in a suit in equity in the highest court of law or equity of the State of Massachusetts.

Though in form, under the practice in Massachusetts, this petition is entitled in the suit in which the receivers were appointed, it was really a bill in equity, and the suit was in all respects a suit in equity.

2. There was drawn in question the validity of an authority exercised under a State, on the ground of its being repugnant to the laws of the United States; and the decision was in favor of such authority.

The receivers were officers of the State court; and the validity of their authority as such officers, after the bankruptcy of the railroad company and the assignment of its property, was directly drawn in question, on the ground of its being repugnant to the Bankrupt Law of the United States; and the decision was expressly in favor of such authority.

*Second,* The receivers of the Boston, Hartford, and Erie Railroad Company were not entitled to maintain suit for the recovery of the coupons in controversy after the adjudication of the bankruptcy of that company, and the assignment of all its property by a register in bankruptcy to assignees in bankruptcy duly elected and appointed.

The statute of the United States, the paramount law of the land, in force at the time of the commencement of proceedings in bankruptcy against the company, provided that, as soon as the assignee in bankruptcy was appointed and qualified, the judge of the District Court, or, in case of no opposing interest, the register, " shall, by an instrument under his hand, assign and convey to the assignee all the estate, real and personal, of the bankrupt, with all his deeds, books, and papers relating thereto; and such assignment shall relate back to the commencement of said proceedings in bankruptcy; *and thereupon, by operation of law, the title to all such property and estate, both real and personal, shall vest in 'l assignee,"* &c.    14 Stat. 522, sect. 14.

The statute is explicit and peremptory that the title to all the property and estate of the bankrupt shall, upon assignment duly made to the assignee in bankruptcy, vest by operation of law in such assignee.

It is submitted, that, after such assignment, the assignee, and he alone, is entitled to bring suit for the possession of

property claimed to be the property of the bankrupt. *Smith* v. *Buchanan*, 8 Blatch. 153.

The cases in which it has been held that the United States bankruptcy courts will not interfere with property in possession of a State court do not apply in this case.

Whether or not the principle of those cases can be maintained it is not necessary to discuss. They are distinguished from this case by the fact that in all of them the officers of the State court were *actually in possession of the property in controversy* at the time of the commencement of the proceedings in bankruptcy. *Sedgwick* v. *Menck*, 6 Blatch. 156; *Clark* v. *Bininger*, 3 N. B. R. 524; *Alden v. Railroad Co.*, 5 id. 230; *Beecher* v. *Bininger*, 7 Blatch. 171.

The question of the right of receivers appointed by a State court to maintain suit for the recovery of the alleged property of a bankrupt, after an adjudication in bankruptcy and the assignment thereunder, has never been decided.

It cannot be contended that the decree appointing the receivers of its own force put them into possession of the property in controversy. The decree cannot be so construed. Its language and spirit are directly opposed to such a construction.

To hold that the mere appointment of receivers by a State court *ipso facto* puts them into possession of all the debtor's property would be to deal an almost fatal blow at the Bankrupt Law; for if, as has been held, the Bankruptcy Court will not interfere with property in the possession of receivers, and the mere fact of their appointment puts them in possession, it will be an easy matter to avoid the operation of that law, or make proceedings under it a solemn farce, by simply suing the debtor, and procuring the appointment of a receiver of his property.

It is submitted that the defendants in error were not entitled to maintain their suit in the court below; and that the decree should be reversed, with directions to dismiss the petition.

*Mr. Benjamin F. Brooks* and *Mr. James J. Storrow* for defendants in error.

It is clear that the amended answer does not set up any title in the plaintiffs in error accruing to them under any statute of

the United States. It is well settled that the right to bring a writ of error under the second clause of the twenty-fifth section of the old Judiciary Act is given to the party who claims the right or the title under the statute, the construction of which is drawn in question : it is for him to exercise it or not as he sees fit, to protect his own interests. The writ is not given to strangers, volunteers, mere trespassers or wrong-doers, who hold not under, but adversely to, such right or title. *Henderson* v. *Tennessee*, 10 How. 311, and cases cited; *Hale* v. *Gaines*, 22 id. 149; *Verden* v. *Colman*, 1 Black, 472.

The act of 1867, sect. 2, under which this writ was brought, re-enacted in this respect the language of the old law ; the only change made serving to make the case still stronger against the plaintiffs in error. For the language of the old law, which seemed to give some color to the idea that it was enough that the right claimed was such that it " drew in question the construction of any clause of . . . a statute of the United States," was omitted ; and the present act is in terms restricted (as by the decisions of this court the former act was restricted) to cases of a " right, title, &c., claimed under . . . any statute of the United States." R. S., sect. 709, follows the act of 1867.

The first part of sect. 2 of the act of 1867 (R. S. sect. 709) must receive the same construction. It is true that the receivers exercise an authority given by the State court, the power of which the plaintiffs in error deny; and they assign a statute of the United States as the ground of their denial. But the same reasons which led the court in *Murdock* v. *Memphis* (20 Wall. 590) to hold that a very striking change of language did not indicate an intention to change the old construction with regard to the questions raised will lead the court now to say that a re-enactment of the language without variation in the same section forbids any inference of an intention to inaugurate a change in the settled rule as to the persons who are entitled to raise the questions ; and to hold that a different rule applied in resisting a claim made by State authority, and asserting an immunity claimed under Federal authority, would be, not merely to introduce discord into the law, but to provide grounds for opposite decisions in the same case. Indeed, the language of this part of the section is less strong in favor of the plain-

tiffs' claim than the language of the act of 1789, upon which the cases first above cited were decided.

The writ should therefore be dismissed for want of jurisdiction.

Mr. Chief Justice Waite delivered the opinion of the court.

Our jurisdiction in this case depends upon the effect to be given to that provision of the Judiciary Act which authorizes this court to re-examine the decisions of the highest court of a State in certain cases, "where any title, right, privilege, or immunity is claimed under" any statute of the United States. .

The plaintiffs in error did not claim under the assignees in bankruptcy. They set up the title of the assignees, not to protect their own, but to defeat that of the receivers appointed by the State court. They claimed adversely to both the receivers and assignees. They did not even allege that the assignees had ever attempted to assert title. The contest was one originally for the possession of certain papers. The decree for money was given, because, pending the suit, the papers sought for had been exchanged for money, and the receivers were willing to accept the exchange. In the absence of the assignees from the case, the decree could have no effect upon their title to the coupons or money. If, when the demand was made by the receivers, the plaintiffs in error had surrendered the coupons, that surrender would have been a complete defence to a future action by the assignees, inasmuch as they had not before that time asserted their claim, either by demand or notice. The title of the assignees to the property would not have been defeated by the transfer. Whatever rights they had against the plaintiffs in error could be enforced by an appropriate proceeding against the receivers. The whole effect of the surrender, so far as the assignees were concerned, was to transfer the custody of the property from the plaintiffs in error to the receivers. In this case the transfer was not voluntary, but in pursuance of a decree rendered by a court of competent jurisdiction, with the assent of the assignees. Under such circumstances, it is not easy to see how the assignees can proceed further against the parties, who have only obeyed the commands of the court. Clearly, their remedy, if they have any, is against the property in the hands of the receivers.

The second section of the act of Feb. 5, 1867 (14 Stat. 385), which was in force when this writ of error was brought, and which has been substantially re-enacted in the Revised Statutes (sect. 709), differs only from the twenty-fifth section of the Judiciary Act of 1789, so far as the provision now under consideration is concerned, in the substitution of the word " immunity " for " exemption." In the old act, the words were " title, right, privilege, or *exemption;* " in the last, " title, right, privilege, or *immunity.*" This does not materially affect the rights of the parties in the present case. The words, when used in this connection and applied to the circumstances of this case, have substantially the same meaning.

The construction of this provision in the act of 1789 came before this court for consideration as early as 1809, in the case of *Owing's Lessee* v. *Norwood,* 5 Cranch, 344. That was an action of ejectment in a State court. The defendant, being in possession, set up an outstanding title in a third person under a treaty. The writ of error from this court was dismissed for want of jurisdiction. In the progress of the argument, Chief Justice Marshall used this language : " Whenever a right grows out of or is protected by a treaty, it is sanctioned against all the laws and decisions of the States; and whoever may have this right, it is to be protected. But if the person's title is not affected by the treaty, if he claims nothing under a treaty, his title cannot be protected by a treaty. If Scarth or his heirs had claimed, it would have been a case arising under a treaty. But neither the title of Scarth nor of any person claiming under him can be affected by the decision of this case." In *Montgomery* v. *Hernandez,* 12 Wheat. 129, a suit was brought in a State court by parties beneficially interested in a bond given to the United States by a marshal to secure the faithful performance of his official duties. The suit was in the names of the beneficiaries, and not in that of the United States for their use. It was insisted that there could be no recovery, because the action should have been prosecuted in the name of the United States; and this was assigned for error in this court. But it was said that " the plaintiff in error did not and could not claim any right, title, privilege, or exemption by or under the marshal's bond, or any act of Congress giving authority to sue

the obligors for a breach of the condition," and that the court had no jurisdiction of the case on that ground. Again: the same question was presented and elaborately argued in *Henderson* v. *Tennessee*, 10 How. 311, decided in 1850. That also was an action of ejectment in a State court, in which the defendant set up an outstanding title in a third person, under an Indian treaty; and there, too, the writ was dismissed. In delivering the opinion of the court, Chief Justice Taney said, "It is true, the title set up in this case was claimed under a treaty; but, to give jurisdiction to this court, the party must claim the right for himself, and not for a third person in whose title he has no interest. . . . The heirs of Miller appear to have no interest in this suit, nor can their rights be affected by the decision. The judgment in this case is no obstacle to their assertion of their title in another suit brought by themselves or any person claiming a legal title under them." To the same effect are *Hale* v. *Gaines*, 22 How. 149, 160, and *Verden* v. *Coleman*, 1 Black, 472. This must be considered as settling the law in this class of cases; and it seems to be decisive of this case. The plaintiffs in error claim no title, right, privilege, or immunity under the Bankrupt Law. Their obligation to account for the coupons in their hands is not discharged by the law. The title of the assignees cannot be affected by the decree, except through their consent. It follows, therefore, that this case must be *dismissed for want of jurisdiction*.

NOTE. — *Farwell* v. *Converse et al.*, in error to the Supreme Judicial Court of Massachusetts, differs from the preceding case in this, that the decree against Farwell was for the delivery of the coupons which still remained in his hands, and not for the money collected upon them. The writ in this case was, therefore, dismissed for the reasons appearing in the opinion given in that case.