PARKER *v.* MISSISSIPPI STATE TAX COMMISSION.

(Division B. May 24, 1937. Suggestion of Error Overruled July 1, 1937.)

[174 So. 567. No. 32763.]

Herbert M. Fant, J. M. Thomas, and E. F. Steiner, all of New Orleans, for appellant.

**J. A. Lauderdale,** Assistant Attorney-General, for appellee.

**Anderson, J.,** delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Hinds county. The question involved is whether appellant's salary as vice president of the Federal Land Bank of New Orleans is subject to state income tax, under chapter 120, Laws 1934. Appellant is a resident of the state of Mississippi; holds that position with the Federal Land Bank of New Orleans, and receives an annual salary of $4,590. The chancellor denied the exemption from taxation, and from that decree appellant prosecutes this appeal.

In considering this question, the principle should be kept in mind that exemptions from taxation will not be presumed; the burden is on the claimant to establish clearly his right; the statute is strictly construed against the claim. Jackson Fertilizer Company v. Stone, 173 Miss. 183, 162 So. 170; New Colonial Ice Co. v. Helvering, 292 U. S. 435, 54 S. Ct. 788, 78 L. Ed. 1348; Charles Ilfeld Co. v. Hernandez, 292 U. S. 62, 54 S. Ct. 596, 78 L. Ed. 1127.

The exemption here is claimed upon the ground that the land bank is a federal governmental agency, and for that reason not only its assets but the salaries of its officers are exempt from state taxation. The federal exemption statute, 39 Stat. 380, section 26 (12 U. S. C. A., section 931), is not broad enough in its language to cover the salaries of the bank's officers and employees. It provides, in substance, that every federal land bank and national farm loan association, including the capital and reserve or surplus, and the income derived therefrom shall be ''exempt from federal, state, municipal, and local taxation, except taxes upon real estate.''

The question is not without difficulty. We have reached the conclusion, however, that the decree of the chancellor was right. The solution, we think, turns upon whether federal land banks are predominantly governmental or private instrumentalities; in other

words, whether they were established mainly for private purposes with governmental powers incidental, or the converse. Federal land banks, though federal instrumentalities, possess many of the characteristics of private business corporations. The statute does not contemplate that their stock shall be wholly or even chiefly owned by the government; private investors may own it. Subscription to its stock by the borrowing national farm loan associations is compulsory. Their operations are, in part at least, for a profit. They have the power to enter into contracts, borrow money, receive interest, pay the expenses and commissions of agents, pay dividends on their stock, and they may acquire and dispose of property in their own right. The outstanding purpose in their establishment was to make loans on farm lands. Federal Land Bank of St. Louis v. Priddy, 295 U. S. 229, 55 S. Ct. 705, 79 L. Ed. 1408; Federal Land Bank v. Gaines, 290 U. S. 247, 54 S. Ct. 168, 78 L. Ed. 298.

Under our dual form of government, the Federal Constitution impliedly prohibits either the federal or state governments from taxing the governmental instrumentalities of the other; each is supreme within its sphere. Metcalf & Eddy v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384; Brush v. Commissioner of Internal Revenue, 57 S. Ct. 495, 81 L. Ed. 443; New York ex rel. Rogers v. Graves, 57 S. Ct. 269, 81 L. Ed. 202. In the Brush Case the court held that salaries and compensation paid to municipal officers of the city of New York, engaged in the performance of the city's governmental functions, were immune from federal taxation, under the principle that neither a state nor the federal government may levy a tax which will burden the governmental activities of the other. That case involved the question of whether the salary of the chief engineer of the bureau of water supply of the city of New York was subject to a federal income tax. The decision was based on the fact that the maintenance of the waterworks system was predominantly for the purpose of fire protection and promoting

the public health and convenience. The court held that the fact that a charge was made for water furnished private consumers did not prevent it from being a governmental instrumentality. The Rogers Case involved the question of whether the salary of the general counsel of the Panama Railroad Company was subject to a New York state income tax, of which state he was a resident. The court held that it was not; that the construction, operation, and maintenance of the Panama Canal was within the commerce clause of the Federal Constitution, and the canal was an instrumentality of the federal government, and the operation of the Panama Railroad, the entire capital stock of which was owned by the federal government, was so connected with the Panama Canal as to confer upon the railroad company the character of a federal instrumentality, free from state taxation, notwithstanding the railroad company to a limited extent engaged in private business. But reversing the facts of that case: Had a large part of the stock of the railroad company been privately owned, and had the railroad been operated mainly for private purposes—in other words, had it been predominantly a private enterprise and its governmental activities incidental and intended only in aid of its private business —would the result have been the same? We think not. We are of the opinion that such a condition would bring the railroad within the principle that neither the federal government nor a state can deprive the other of its revenue by engaging in private business.

Affirmed.