CLEMENT v. STONE et al.

(In Banc.  Nov. 8, 1943.  Suggestion of Error Overruled Dec. 20, 1943.)

[15 So. (2d) 517.  No. 35373.]

776

Canale, Glankler, Loch & Little, W. G. Boone, and Harold W. S. Leeker, all of Memphis, Tenn., for appellant.

778

Greek L. Rice, Attorney General, by W. D. Conn, Jr., Assistant Attorney General, and J. H. Sumrall, of Jackson, for appellees.

782

784

Argued orally by **W. G. Boone**, for appellant, and by **W. D. Conn, Jr.**, and **J. H. Sumrall**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

When this appeal was first considered, the case was reversed and remanded on the theory that the State of Tennessee levies an income tax within the meaning of Section 37, Chapter 120, Laws of 1934, as it appears in Chapter 124, Laws of 1940, and which said Section 37 reads as follows: "A citizen of a state other than the state of Mississippi which levies an income tax shall be exempt from the payment of an income tax on all income received from within the state of Mississippi if the state of which he is a citizen extends the same exemption to a citizen of this state."

In the former opinion, we stated that "the manifest purpose of the Mississippi statute, Section 37, Chapter 120, Laws of 1934, is to avoid the taxation of one's income by more than one state; to accomplish which the statute should be liberally construed . . ." Clement v. Stone et al., 195 Miss. 770, 13 So. (2d) 647, 648.

It appears, however, that there is no question of double taxation here involved, and that the appellant by this proceeding is seeking relief from taxes and has predicated his claim therefor on an alleged "exemption" contained in the above mentioned statute in his favor. Hence, the legal principle which requires that a tax law be construed against the taxing power and that all doubts should be resolved in favor of the taxpayer has no application here, for the reason that one claiming an exemption from a tax must show that the statute involved grants an exemption and that he comes clearly within the provisions of

such exemption clause. A statute granting exemption from taxes must be strictly construed against the claimed exemption, and such a statute should never be enlarged by construction in favor of nonliability. Teche Lines v. Board of Sup'rs of Forrest County, 165 Miss. 594, 143 So. 486; Adams County v. National Box Co., 125 Miss. 598, 88 So. 168; Gulfport Bldg. & Loan Ass'n v. City of Gulfport, 155 Miss. 498, 124 So. 658; Magnolia Bldg. & Loan Ass'n v. Miller (Miss.), 128 So. 585, 282 U. S. 803, 51 S. Ct. 86, 75 L. Ed. 722; Hollandale Ice Co. v. Board of Sup'rs of Washington County, 171 Miss. 515, 157 So. 689; Barnes v. Jones, 139 Miss. 675, 103 So. 773, 43 A. L. R. 673; Jackson Fertilizer Co. v. Stone, 173 Miss. 183, 162 So. 170; Parker v. Mississippi State Tax Commission, 178 Miss. 680, 174 So. 567, certiorari denied 302 U. S. 742, 68 S. Ct. 144, 82 L. Ed. 574; Chapman v. State, 179 Miss. 507, 176 So. 391. In other words, the principle that exemption laws are to be liberally construed in favor of the owner of property when it is sought to be subjected to sale under execution or attachment does not prevail when an exemption is claimed from liability for taxes.

While the correct principle was announced in the former opinion as to the manifest purpose of the said Section 37, Chapter 120, Laws of 1934, supra, when it was said that such purpose "is to avoid the taxation of one's income by more than one state," there is no occasion for the application of that principle in order not to overburden the taxpayer in the case at bar, since the State of Tennessee has no statute that would impose an income tax, for any income produced by him on his farm or tax upon the appellant, a citizen and resident of that plantation in Mississippi. Nor does the State of Tennessee levy an income tax on incomes derived from farms or plantations located in that state, whether such income be produced by its own citizens or nonresidents thereof. It does not extend the same "exemption" to a citizen of this state that is sought to be obtained by the appellant in the instant case, but on the contrary it has no income

tax law at all which is in any manner applicable either to incomes produced by residents or nonresidents of that state from farming operations conducted therein, or from any other business, trade, profession or calling carried on there. In other words, that state does not levy a tax upon the income earned or produced by any individual, whether he resides there or elsewhere. As will be hereinafter shown, the legislature of Tennessee can levy a tax upon incomes derived only from stocks and bonds that are not taxed ad valorem; and all property real, personal or mixed, is required by the state Constitution to be taxed according to its value. Article II, Section 28 of the Constitution of Tennessee, 1870, which is still in force.

The said Article II, Section 28, of the Constitution of Tennessee, supra, provides, among other things, that: ''All property, real, personal or mixed, shall be taxed . . . All property shall be taxed according to its value . . . But the Legislature shall have power to tax Merchants, Peddlers, and privileges, in such manner as they may from time to time direct. . . . The Legislature shall have the power to levy a tax upon incomes derived from stocks and bonds that are not taxed ad valorem.''

Thus, it will be seen that the foregoing section of the Constitution of Tennessee recognizes only two general kinds of taxation—ad valorem and privilege. These cover the whole domain of taxation, but it appears that to supply a deficiency in the general scheme of taxation, this constitutional provision authorizes the legislature to levy a tax upon incomes derived from stocks and bonds where such securities may not be reached by the regular provision covering ad valorem taxation. And, it was held in the case of Evans v. McCabe, 164 Tenn. 672, 11 Smith 672, 52 S. W. (2d) 159, 617, that this provision, which is in the nature of a proviso, denies to the legislature the power to tax incomes other than those derived from stocks and bonds not taxed ad valorem, and that such restraint applies whether the tax thereon be regarded as a property

tax or as a privilege tax on the ownership of such stocks and bonds. In that case, the court dealt in express language with this 'so-called income tax as being either a property tax or a privilege tax, without declaring which, although it would appear that the tax is one in the nature of a property tax which is calculated on the basis of 6% and 4% of the income derived each year from such securities, in the event that for any reason they are not taxed ad valorem.

Section 1123(1), as it appears in Michie's Tennessee Code of 1938 provides that ''an income tax in the amount of six (6%) per cent per annum (except as provided in the next paragraph [therein]), shall be levied and collected on income derived by way of dividends from stocks, or by way of interest on bonds of each person, partnership, association, trust and corporation in the state of Tennessee who received, or to whom accrued, or to whom was credited during any year income from the sources above enumerated except as hereafter provided.''

Section 1123(4) excepts from the right to levy a tax on incomes derived from stocks and bonds any authority to levy such a tax on incomes derived from obligations of the United States, whether evidenced by bonds or by stock in corporate federal agencies, and on incomes derived from bonds of the state, county, municipal and other governmental subdivisions, even though the same are not taxed ad valorem.

Section 1123(5) provides that:

''No corporation shall be required to pay any income tax which otherwise would be assessable under this law on any stocks and/or bonds which constitute a part of the aggregate of its corporate property on which it is now assessed or shall be assessed for ad valorem taxes; nor when such stocks and/or bonds constitute a part of the assets which determine the value of the shares which are now or shall hereafter be assessed for ad valorem taxes to the stockholder.

"No person shall be assessed with this tax on any stock in any corporation where the value of the shares are assessed ad valorem to the stockholder by this state."

The income from certain other stocks and bonds than those above mentioned are not subject to the tax, and from which it appears that Tennessee in reality levies no income tax within the meaning of the reciprocity clause of our statute here invoked.

Section 1123(28) of the said Code of Tennessee provides that: "Trustees, guardians, administrators, executors and other persons acting in a fiduciary capacity who receive income taxable under this law for the benefit of residents of Tennessee, shall be required to make returns under this law and to pay the tax herein levied. Trustees, guardians and other persons acting in a fiduciary capacity who are residents of Tennessee, and who receive income on behalf of nonresident beneficiaries, shall not be required to pay tax under this law even though such income be derived from stocks or bonds which would otherwise be assessable under this law. However, executors or administrators receiving income taxable under this law from stocks or bonds which were the property of a decedent who resided in Tennessee shall pay tax upon the same until such time as such stocks or bonds have been distributed or transferred to distributees or legatees thereof."

It is not at all unlikely that the failure of the legislature of Tennessee to levy a tax on incomes received by non-residents from stocks and bonds was on the theory that such intangible securities are generally taxable at their situs, and not elsewhere. This idea has support in the fact that the last provision of the statute last above quoted provides in substance that these intangibles are taxable while they are in the hands of executors or administrators in Tennessee, if they were the property of a decedent who resided there, but that when the same have been distributed or transferred to distributees or legatees they are no longer taxable. And, it was held in the case of

Curry v. McCanless (Tenn.), 307 U. S. 357, 59 S. Ct. 900, 906, 83 L. Ed. 1339, 1347, 123 A. L. R. 162, that: "In cases where the owner of intangibles confines his activity to the place of his domicile it has been found convenient to substitute a rule for a reason, cf. [People of State of] New York ex rel. Cohn v. Graves, 300 U. S. 308, 313, 57 S. Ct. 466, 467, 81 L. Ed. 666, 670, 108 A. L. R. 721; First Bank Stock Corp. v. [State of] Minnesota, 301 U. S. 234, 241, 57 S. Ct. 677, 680, 81 L. Ed. 1061, 1065, 113 A. L. R. 228, by saying that his intangibles are taxed at their situs and not elsewhere, or, perhaps less artificially, by invoking the maxim mobilia sequuntur personam, Blodgett v. Silberman [277 U. S. 1, 72 L. Ed. 749, 48 S. Ct. 410], supra; Baldwin v. [State of] Missouri [281 U. S. 586, 74 L. Ed. 1056, 50 S. Ct. 436, 72 A. L. R. 1303], supra, which means only that it is the identity or association of intangibles with the person of their owner at his domicile which gives jurisdiction to tax." Neither does the State of Mississippi undertake to collect any tax on income of citizens of Tennessee, or other nonresidents, arising from stocks and bonds issued by corporations in this state; but the question of whether or not our legislature has the power and jurisdiction to do so is not involved and is not herein decided. It is sufficient to say that the failure of either state to collect a gross or net income tax on merely one item or kind of income would not entitle the appellant to the benefit of the reciprocity clause of our income statute invoked herein as to the income received by him from his farming operations in Mississippi.

In order to sustain the tax liability of the appellant herein, it is unnecessary that we hold that the words "income tax" used by the legislature of Mississippi in Section 37, Chapter 120, Laws of 1934, necessarily mean a net income tax, such as the legislature was then dealing with in enacting the said Chapter 120, supra, since the State of Tennessee levies an income tax neither on the net nor gross earnings of its citizens. In other words, that state has no general income tax law at all on either

gross or net incomes. Nor do we hold that it is necessary that there shall be an evaluation of benefits so as to bring about equality under the provisions of the income tax law of our state when compared with the benefits of an income tax law of the foreign state whose citizens may seek the benefit of the reciprocity provision of our statute. But, we do hold that for a citizen of a state other than the State of Mississippi to be exempt from an income tax on all income received from within the State of Mississippi, the state of which he is a citizen must have a general income tax law at least similar in principle to our own, as to the character and source of income taxed, in order for such nonresident to be entitled to the exemption on the ground of reciprocity, or to avoid double taxation.

The principle is well established that the theory and philosophy of a reciprocity provision in a tax statute is to prevent double taxation. In the case of Bliss v. Bliss, 221 Mass. 201, 109 N. E. 148, 152, L. R. A. 1916A, 889, the court, in its opinion, said: "The New York statute covers the same general subject of taxation on successions as does our act. It is of 'like character.' It defines the classes of property to which it applies. It omits the particular kind of property here involved." And, while we do not subscribe to all that is said in the opinion in that case, we are in full accord with the statement contained therein to the effect that: "Its manifest purpose is to avoid duplication of taxation on the same succession by different states. Although this kind of double taxation violates no constitutional guaranty, the hardship of it has been recognized . . . Moreover the advantage of commity between the several states touching taxation laws, so that a general system might prevail, harmonious in its principles and avoiding taxation of the same property in two jurisdictions, has been suggested and is manifest. . . . Our statute should be interpreted in the light of the evil at which it was aimed and the purpose intended to be accomplished."

It is said in 26 R. C. L. 296 that "exemption from taxation has two meanings, one broad and the other narrow. In the broad sense whenever a tax is laid on property which does not apply to all property within the jurisdiction of the taxing authorities, the property not taxed may be said to be exempted . . . In its narrower sense an exemption from taxation is the grant of immunity to particular persons or corporations or to persons or corporations of a particular class from a tax upon property or an excise which persons or corporations generally within the same taxing district are obligated to pay." But the State of Tennessee extends to our citizens no such "exemption" as is claimed by the appellant here within the meaning of either of the foregoing definitions. There can be no exemption from taxation in favor of those of a particular class until there is a law enacted which is applicable to others. Exemption means "immunity from a general burden, tax or charge." Black's Law Dictionary, 2nd Ed., 463; Long v. Converse, 91 U. S. 105, 113, 23 L. Ed. 233. Moreover, no exemption from taxation will be created by implication. 26 R. C. L. 302.

In other words, we are of the opinion that Section 37, Chapter 120, Laws of 1934, should be interpreted to mean that our legislature proposed to our sister states that if they would exempt our citizens from an income tax that their own citizens are required to pay, then Mississippi would exempt their citizens from the payment of the income tax that our citizens are required to pay under the said Chapter 120, Laws of 1934.

Since the State of Tennessee has offered no such reciprocity, and has no general income tax law, either on gross or net incomes, containing a reciprocity provision, the exemption claimed by the appellant herein should be denied.

The remaining question to be decided in the case at bar is whether or not the appellant was entitled to deduct from his taxable income derived from his farm or plantation in Mississippi during the year 1940 an alleged loss

of $4,450 sustained on certain contracts made in Tennessee for hedge sales of cotton on the New York Cotton Exchange and of cottonseed on the Memphis Merchants Exchange, and which sales allegedly contemplated an actual future delivery of the products so sold, and at the then prevailing market price, which later advanced. The question thus presented is to be determined by whether or not such loss was an ordinary and necessary expense paid or incurred by the appellant during the taxable year in carrying on his farming operations in this state. Section 8, Chapter 120, Laws of 1934, provides that in computing the net income the taxpayer shall be allowed to deduct "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." The question is not whether the said hedge sales constituted legitimate transactions under the law, or whether the making of such contracts was a wise and proper precautionary measure against sustaining a loss on his cotton due to an anticipated fluctuation in price on the market, but rather the right to such deduction is to be determined by the issue of whether or not a loss sustained thereby would be an ordinary and necessary expense in carrying on a farming operation. We do not think so.

We are therefore of the opinion that the action of the court below in sustaining the demurrer to the appellant's petition for a refund of the taxes paid, and in holding that the petition or bill of complaint stated no case for the allowance of the deduction claimed, was correct. Hence, the decree of the court below will be affirmed and the cause remanded, the judgment rendered pursuant to the former opinion herein havng been heretofore set aside. It is so ordered.

Affirmed and remanded.

**Smith, C. J.,** delivered a partially concurring opinion.

My associates may be right in holding that this Tennessee statute does not impose the type of income tax

required by Section 37, Chapter 120, Laws of 1934. At all events, I can not confidently say that they are not, consequently I cheerfully surrender my former views herein and yield to their judgment in the matter. The Tennessee tax is a tax on gross income and "as used in the income tax statutes the word 'income' has usually been construed to mean net income as opposed to gross income." Niland v. Niland, 154 Wis. 514, 143 N. W. 170, Ann. Cas. 1915B, 1127, at page 1129, and authorities there set forth in note thereto; State v. Wisconsin Tax Comm., 185 Wis. 525, 201 N. W. 764; 26 R. C. L., Sec. 122, p. 140. This construction is here reinforced by the fact that Chapter 120, Laws of 1934, under Section 37 of which the appellant claimed to be relieved of this tax, imposes not a gross but a net income tax.

I do not concur in all that is said in the controlling opinion herein, particularly in its suggestion that a state is without the power under the Federal Constitution to tax the income of a nonresident derived from intangible property situated in the taxing state; e. g. dividends on stock of corporations domiciled in the taxing state and interest on bonds and notes issued by such corporations or persons residing in the taxing state. The Supreme Court of the United States may eventually so hold, but has not yet done so. In this connection Shaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. Ed. 445; Travis v. Yale & Towne Mfg. Co., 252 U. S. 60, 40 S. Ct. 228, 64 L. Ed. 460; and also "State Jurisdiction for Income Tax Purposes" by Henry Rosschaefer, 44 Harvard Law Review 1075, are of interest. Curry v. McCanless, 307 U. S. 357, 59 S. Ct. 900, 83 L. Ed. 1339, 123 A. L. R. 162, cited in the controlling opinion, is not an income tax case and is not directly, if at all, in point here.

It is said in the controlling opinion that the State of Mississippi does not "undertake to collect any tax on income of citizens of Tennessee, or other nonresidents, arising from stocks and bonds issued by corporations in this state." The only information I have as to that is

contained in Chapter 120, Laws of 1934, wherein the legislature definitely and positively imposed such a tax. I have not tried to ascertain whether the taxing officers have obeyed this statute or not, and that fact, whatever it may be, is beside the mark here.