# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### June 4, 2010 Session

## MICHAEL SANFORD v. WAUGH & COMPANY, INC. ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Chancery Court for Davidson County**
**No. 05-943-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2007-02528-SC-R11-CV - Filed December 17, 2010**

---

The primary issue presented in this appeal is whether an individual creditor of an insolvent corporation may bring a direct cause of action for breach of fiduciary duty against the corporate directors and officers. We hold that a creditor of an insolvent corporation may not bring a direct claim, only a derivative claim, against officers and directors for breach of the fiduciary duties they owe to the corporation. We adopt the reasoning of the Delaware Supreme Court in North American Catholic Educational Programming Foundation, Inc. v. Gheewalla, 930 A.2d 92 (Del. 2007), observing that corporate creditors are adequately protected by existing law, and that recognizing a new direct cause of action is unnecessary and would impede corporate governance. We further hold that the trial court properly excluded evidence of conspiracy to interfere with contract and dismissed the claim for punitive damages. The judgment of the Court of Appeals is reversed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Case Remanded to the Chancery Court for Davidson County**

SHARON G. LEE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., and JANICE M. HOLDER, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

Joseph A. Woodruff and S. Keenan Carter, Nashville, Tennessee, for the appellants, Troy Waugh, Carol Waugh, and Waugh & Company, Inc.

Timothy L. Warnock and Elizabeth O. Gonser, Nashville, Tennessee, for the appellee, Michael Sanford.

# OPINION

## Factual and Procedural Background

In 1995, Michael Sanford and Bruce Prow formed a company called SecureOne, Inc. Mr. Sanford and Mr. Prow each owned a one-half interest in SecureOne, a company that sold and serviced residential and non-residential security systems. In December 2002, following a dispute over the management of the company, Mr. Sanford sold his 50% interest in SecureOne to Mr. Prow and his wife, Leslie Prow, for $3,000,000. Based on their written agreement executed December 19, 2002, Mr. Sanford received $1,000,000 in cash at the closing, a secured promissory note for the remaining $2,000,000 (the "Sanford note"), and a security interest in SecureOne's assets. The Sanford note, executed by the Prows and SecureOne, provided that Mr. Sanford was to receive thirty equal monthly payments of $70,166.50.

To obtain funds to buy Mr. Sanford's interest in SecureOne, Mr. Prow consulted with Troy and Carol Waugh (Mrs. Prow's parents and the defendants in this case). Before the SecureOne stock sale to the Prows, the Waughs bought 25% of Mr. Prow's SecureOne stock for $100,000 and loaned the company an additional $900,000. On December 19, 2002, SecureOne executed two promissory notes: one to the Waughs in the amount of $425,000 and another to Waugh & Co. (Mr. Waugh's consulting and marketing training business for accountants) in the amount of $475,000. SecureOne also executed a security agreement (the "Waugh agreement") detailing the $900,000 loan and listing the Prows as guarantors secured by their 75% stock ownership interest. Mr. Sanford was not advised of these transactions.

After the sale, Mr. Waugh convened a meeting of SecureOne's board of directors, at which the following officers were elected: Mr. Prow – president/CEO; Mrs. Prow – vice-president of finance/treasurer; Mr. Waugh – chairman of the board of directors; and Mrs. Waugh – secretary. The Waugh agreement anticipated and required these elections and officer appointments.

In 2003, SecureOne's sales diminished significantly, and the size of its workforce and scope of operations decreased. The Waughs loaned SecureOne additional money, including $70,000 in August of 2003. In October of 2003, SecureOne defaulted on its obligations under the Waugh agreement, and the Waughs foreclosed on the Prows' shares of SecureOne

stock and obtained 100% ownership in SecureOne. In December of 2003, the Waughs loaned SecureOne an additional $120,000 and took a security interest in SecureOne's "house accounts"[1] to secure the debt.

From February through December of 2003, SecureOne made monthly payments to Mr. Sanford in the amount of $70,166.50. In early 2004, however, the Waughs advised Mr. Sanford that SecureOne could no longer afford to make its payments to him. To settle the remaining debt, the Waughs offered Mr. Sanford approximately $650,000, SecureOne's house accounts, and the company's vehicles. Mr. Sanford declined the offer.

At about the same time, in early 2004, the Waughs decided to wind down SecureOne and began closing its branch locations. SecureOne did not renew its franchise agreement with ADT Security Systems and, in January 2004, received $1,173,213 from ADT, an amount representing the lifetime equity built over the course of SecureOne's agreement with ADT. The remaining operations of SecureOne were moved to the Prows' home, although the Waughs controlled the decisions pertinent to SecureOne's winding down process.

Also in 2004, the Prows started another company, Security Networks, that sold security systems in direct competition with SecureOne. The Prows operated Security Networks out of their home, based in the same room where they operated SecureOne. Mr. Prow brought furniture, equipment, and vehicles from SecureOne and stored additional equipment belonging to SecureOne in his garage. The Prows transferred SecureOne's phone number directly to Security Networks. In 2004, SecureOne paid consulting fees totaling $75,000 to Mr. Waugh and $30,000 to Mrs. Waugh. In 2003 and 2004, SecureOne paid the Waughs a total of $55,991 in interest and paid Waugh & Co. a total of $48,883 in interest.

On February 13, 2004, Mr. Sanford sued Mrs. Prow and SecureOne to enforce the Sanford note that was in default. Mr. Sanford did not sue Mr. Prow, as he had filed for bankruptcy. Mrs. Prow and SecureOne answered and counterclaimed, alleging, among other things, that Mr. Sanford intentionally and/or negligently misrepresented SecureOne's financial condition at the time of the stock sale by stating that all of SecureOne's debts were current and there were no liabilities other than those reflected on SecureOne's balance sheet. Mrs. Prow and SecureOne alleged that SecureOne actually had past due liabilities in the amount of $434,981.55. This cause of action against SecureOne and the Prows

---

[1] SecureOne sold and installed security systems to residential and non-residential customers. If the customer met ADT's credit requirements, SecureOne sold the service contracts to ADT Security Systems, Inc. If a customer did not meet ADT's credit requirements, SecureOne retained and serviced the account directly for a monthly fee of $30. These accounts were SecureOne's "house accounts." In 2003, SecureOne's house accounts generated a monthly revenue of about $30,000.

concluded in April of 2006 when the trial court awarded Mr. Sanford a judgment in the amount of $1,560,000. Mrs. Prow filed for bankruptcy shortly thereafter. Mr. Sanford received approximately $170,000 from SecureOne in satisfaction of the judgment. Mr. Waugh testified that the $170,000 represented the proceeds from sales of the company's vehicles in which Mr. Sanford held a security interest pursuant to the security agreement executed with the Sanford note.

On April 15, 2004, the Waughs and Waugh & Co. filed a separate action against Mr. Sanford, asserting allegations of fraudulent misrepresentation that essentially mirrored the allegations in Mrs. Prow and SecureOne's countercomplaint. The Waughs voluntarily dismissed this action on March 11, 2005.

On April 13, 2005, Mr. Sanford filed his complaint in the action presently on appeal, asserting claims against the Waughs and Waugh & Co. for abuse of process, malicious prosecution, and breach of fiduciary duty. In September of 2006, Mr. Sanford amended his complaint against the Waughs to assert causes of action for fraudulent conveyance, conspiracy, and conversion, and sought compensatory and punitive damages. The Waughs moved for summary judgment on all claims. The trial court granted summary judgment and dismissed Mr. Sanford's claims for abuse of process, conversion, and breach of fiduciary duty, and granted partial summary judgment to the Waughs on the fraudulent conveyance claim with respect to some of the alleged fraudulent transactions. The trial court denied summary judgment on the remaining claims of fraudulent conveyance with respect to consulting fees and interest payments made by SecureOne to the Waughs, conspiracy, and malicious prosecution.

During the discovery process, the Waughs propounded an interrogatory requesting that Mr. Sanford "[i]dentify with specificity the tort underlying the conspiracy claim alleged in . . . the Amended Complaint." Mr. Sanford answered by stating, "Sanford has asserted claims against Defendants for breach of fiduciary duty, malicious prosecution, fraudulent conveyance and conversion, all of which resulted from the Waughs' and the Prows' plan to keep from paying Sanford the money he was owed under the Settlement Agreement and Note." Shortly before trial, on August 7, 2007, the Waughs filed a motion in limine requesting that the trial court exclude any evidence of conspiracy to commit any underlying torts or bad acts other than fraudulent conveyance and malicious prosecution. In response, Mr. Sanford alleged for the first time that the Waughs were guilty of conspiring with the Prows to commit the tort of interference with contract and that he should be allowed to put on evidence of such conspiracy. The trial court granted the Waughs' motion in limine, finding that the plaintiff had failed to plead the tort of interference with contract and that no

discovery had been conducted on this cause of action. The trial court prohibited Mr. Sanford from offering proof of interference with contract as an underlying tort or bad act to establish a conspiracy.

The case was tried before a jury on August 20-24, 2007. At the close of Mr. Sanford's proof, the Waughs moved for a directed verdict on the claims of fraudulent conveyance, malicious prosecution, and punitive damages. The trial court dismissed the claim for punitive damages and denied the motion for directed verdict on the remaining claims. The Waughs presented no additional proof.

The jury returned a verdict in favor of Mr. Sanford on the malicious prosecution claim, with Mr. Waugh, Mrs. Waugh, and Waugh & Co. each liable in the amount of $17,000; in favor of Mr. Sanford on the fraudulent transfer of assets claim with Waugh & Co. liable for $109,733, Mrs. Waugh liable for $48,248, and Mr. Waugh liable for $18,249; and found that the defendants conspired together to commit the torts of malicious prosecution and fraudulent conveyance, resulting in the trial court entering a judgment of joint and several liability against the defendants in the amounts awarded by the jury.

Both parties appealed. The Court of Appeals held that the trial court erred by: (1) granting the Waughs summary judgment on Mr. Sanford's claim for breach of fiduciary duty; (2) granting the Waughs' motion in limine and refusing to allow Mr. Sanford to present evidence supporting a claim of conspiracy to commit interference with contract; and (3) granting a directed verdict and dismissing the punitive damages claim. Sanford v. Waugh & Co., No. M2007-02528-COA-R3-CV, 2009 WL 1910957, at *19 (Tenn. Ct. App. June 30, 2009). The Waughs appealed all three of these rulings by the intermediate court.

## Issues Presented

We address the following issues:

(1) whether an individual creditor of an insolvent corporation may assert a direct claim for breach of fiduciary duty against the corporation's officers and directors;

(2) whether the trial court erred in granting the Waughs' motion in limine and thereby refusing to allow Mr. Sanford to present evidence supporting a claim of conspiracy to commit the tort of interference with contract; and

(3) whether the trial court erred in granting the Waughs a directed verdict on the claim for punitive damages.

**Analysis**
***Direct Cause of Action by Creditor of Insolvent Corporation***
***for Breach of Fiduciary Duty***

Mr. Sanford brought a direct claim for breach of fiduciary duty against the Waughs, as officers and directors of the insolvent corporation, SecureOne. The trial court dismissed the claim and the Court of Appeals reversed, holding that a creditor of an insolvent corporation could bring a direct claim for breach of fiduciary duty against corporate officers and directors. Sanford, 2009 WL 1910957, at *13-14. The question of whether an individual creditor of an insolvent corporation may bring a direct cause of action against the directors and officers for breach of fiduciary duty has not been directly addressed by the courts in Tennessee. This determination presents an issue of law, and therefore we view the trial court's decision de novo with no presumption of correctness. Madden v. Holland Grp. of Tenn., Inc., 277 S.W.3d 896, 898 (Tenn. 2009).

We begin with a brief review of the role and responsibilities of corporate officers and directors. A corporation is governed by its directors and officers. Tennessee Code Annotated section 48-18-101 (2002) establishes the position and general role of a corporate director, stating as follows:

> (a) Except as provided in subsection (c), each corporation must have a board of directors.
>
> (b) All corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors, subject to any limitation set forth in the charter.
>
> (c) A corporation having fifty (50) or fewer shareholders may dispense with or limit the authority of a board of directors by describing in its charter who will perform some or all of the duties of a board of directors; provided, that any such person or persons shall be subject to the same standards of conduct that this chapter imposes on directors in the performance of their duties.

Similarly, Tennessee Code Annotated section 48-18-401 (2002) governs corporate officers by stating that "[a] corporation has the officers described in its bylaws or designated by its board of directors in accordance with the bylaws; provided, that every corporation shall have a president and a secretary." The corporation's officers are appointed or elected by the board of directors unless its charter or bylaws provide otherwise. Id.

In a solvent corporation, there is a clear distinction between the fiduciary duty the officers and directors owe to shareholders of the corporation and the duty the officers and directors owe to creditors. The directors and officers of a corporation owe a fiduciary duty to the corporation and to its shareholders. Deadrick v. Bank of Commerce, 45 S.W. 786, 788 (Tenn. 1898) (observing that a corporation's "officers or agents stand in a fiduciary relation to both" the corporate entity and shareholders); Neese v. Brown, 405 S.W.2d 577, 581 (Tenn. 1964) (observing that "a director, or other officer, of a corporation, although not responsible for errors of judgment[,] is a fiduciary charged with the duty of caring for the property of the corporation and managing its affairs honestly and in good faith") (internal quotation marks omitted); Knox-Tenn Rental Co. v. Jenkins Ins., Inc., 755 S.W.2d 33, 36 (Tenn. 1988) (stating "[a] corporate officer must at all times be loyal to his trust and act in good faith and unselfishly toward the corporation and its stockholders") (quoting Hayes v. Schweikart's Upholstering Co., 402 S.W.2d 472, 483 (Tenn. Ct. App. 1965) (citing 19 C.J.S. Corporations §761b)). A fiduciary is a person holding the character of a trustee who bears the duty to act primarily for the benefit of another. See McRedmond v. Estate of Marianelli, 46 S.W.3d 730, 738 (Tenn. Ct. App. 2000). As fiduciaries, corporate officers and directors must act in good faith, as observed by the McRedmond court:

> With respect to directors in a close corporation, "They are required to act in the utmost good faith, and . . . they impliedly undertake to give to the enterprise the benefit of their care and best judgment and to exercise the powers conferred solely in the interest of the corporation . . . and not for their own personal interests." A fiduciary is not an insurer, but is bound to exercise good faith and due diligence.

Id. (internal citations omitted).

Tennessee Code Annotated section 48-18-301 (2002) (pertaining to directors) and section 48-18-403 (2002) (pertaining to officers) require that directors and officers discharge all duties under their discretionary authority: "(1) In good faith; (2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) In a manner the director [or officer] reasonably believes to be in the best interests[2] of the corporation." Id. Although shareholders, as "owners" of the corporation, cannot exercise any control over the corporation's ordinary business operations, they are properly protected by the fiduciary duty owed to them and the corporation by the directors and officers. "[A]lthough the shareholder bears the risk, it is the director and officer who, through their decisions, can directly affect the value of the firm. Thus directors must act as

---

[2] The quoted language is identical in the two cited statutory sections, except that section 48-18-301 uses the word "interests" and section 48-18-403 uses the singular "interest."

custodians entrusted with the management of the shareholders' assets." Cory Dean Kandestin, Note, <u>The Duty to Creditors in Near-Insolvent Firms: Eliminating the "Near-Insolvency" Distinction</u>, 60 Vand. L. Rev. 1235, 1242 (2007) (internal quotation marks omitted).

Officers and directors, however, do not owe a fiduciary duty to creditors of a solvent corporation. <u>Deadrick</u>, 45 S.W. at 788; <u>Merriman v. Smith</u>, 599 S.W.2d 548, 555 (Tenn. Ct. App. 1979). Unlike shareholders, creditors are able to protect their interests by contracts, including loan and security agreements, before lending money to the firm. "Creditors have fixed claims against the corporation, entitling them to receive repayment of their principal, with interest, at a specified time. Shareholders have the right to participate in firm profits through dividends . . . and to share in residual assets . . . upon dissolution." J. William Callison, <u>Why a Fiduciary Duty Shift to Creditors of Insolvent Business Entities is Incorrect as a Matter of Theory and Practice</u>, 1 J. Bus. & Tech. L. 431, 431 (2007).

The directors of a corporation or a majority of its shareholders, acting for the corporation, are the proper parties to bring a claim on behalf of a corporation. <u>House v. Estate of Edmondson</u>, 245 S.W.3d 372, 381 (Tenn. 2008). Also to protect their rights, corporate shareholders may bring a derivative action. "A derivative action is a suit brought by one or more shareholders on behalf of a corporation to redress an injury sustained by, or to enforce a duty owed to, the corporation." <u>Id.</u> at 381-82.

In contrast, creditors may not directly sue officers and directors of a corporation because they allegedly failed to properly manage corporate affairs. In <u>Merriman</u>, the court observed the general rule that "to become directly liable to a creditor, a statutory duty must devolve upon the director or there must be some conduct which creates privity of contract between them or which results in tortious injury to the creditor for which an action *ex delicto*[3] will lie." 599 S.W.2d at 555; <u>accord</u> <u>Schlater v. Haynie</u>, 833 S.W.2d 919, 924 (Tenn. Ct. App. 1991). The <u>Merriman</u> court cited and applied the following general principles observed by this Court in <u>Deadrick</u>:

> That directors are liable in an action at law to their principal, the corporation, for losses resulting to it from their malfeasance, misfeasance, or their failure or neglect to discharge the duties imposed by their office, and, in equity, to the stockholders for these losses, the corporation declining to bring suit, is clear. . . . Though the corporation is the legal entity, yet the stockholders are interested in the operations of the corporation while in a state of activity, and,

---

[3] "Ex delicto" is defined as "[a]rising from a crime or tort." <u>Black's Law Dictionary</u> 649 (9th ed. 2009).

upon its dissolution, in the distribution of its property, after all debts are paid; and so its officers or agents stand in a fiduciary relation to both. But it is otherwise as to creditors. . . . It is true that the creditors may extend credit upon the faith that the company has assets to pay its debts, and that these assets are prudently managed; yet they are strangers to the directors; they maintain no fiduciary relation with them; there is a lack of privity between the two.

. . .

To enable the creditors to sue the defendants directly, they must have some independent right of action, either legal or equitable.

45 S.W. at 788-89. The Deadrick Court emphasized that "we are not now dealing . . . with a case where directors have unlawfully or fraudulently appropriated to their own use, or otherwise wrongfully devested the assets of the bank," but only with allegations of ordinary negligent mismanagement of the corporation. Id. at 787.

When a corporation becomes insolvent, additional protection is afforded to corporate creditors, including the power to initiate a derivative action on behalf of the corporation, because upon a corporation's insolvency, "its creditors take the place of the shareholders as the residual beneficiaries of any increase in value." N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla, 930 A.2d 92, 101 (Del. 2007); cf. Intertherm, Inc. v. Olympic Homes Sys., Inc., 569 S.W.2d 467, 468 (Tenn. Ct. App. 1978) (derivative action by certain creditors on behalf of all creditors against directors of insolvent corporation).

Creditors are further protected by the application of the "trust fund" doctrine which allows creditors of an insolvent or dissolved corporation to collect payment of their debts before distributions to shareholders, as noted by this Court as follows:

Under this doctrine, as it has been applied in Tennessee, the creditors of an insolvent or dissolved corporation "are entitled in equity to payment of their debts before any distribution of corporate property is made among stockholders," and these creditors also possess "a right to follow its assets or property into the hands of [anyone] who is not a holder in good faith in the ordinary course of business." See Jennings, Neff & Co. v. Crystal Ice Co., 128 Tenn. 231, 236, 159 S.W. 1088, 1089 (1913).

Kradel v. Piper Indus., 60 S.W.3d 744, 756 (Tenn. 2001).

Mr. Sanford is asking this Court to recognize a new *direct*, not derivative, cause of action by a single creditor against the corporate directors and/or officers of an insolvent corporation. The trial court dismissed Mr. Sanford's direct claim for breach of fiduciary duty, finding the reasoning of the Delaware Supreme Court in the Gheewalla case to be persuasive. In Gheewalla, the Court addressed as a matter of first impression the same issue presented here and concluded that "the creditors of a Delaware corporation that is either insolvent or in the zone of insolvency have no right, as a matter of law, to assert direct claims for breach of fiduciary duty against the corporation's directors." Id. at 94. The Gheewalla Court provided two reasons that we find persuasive in support of its conclusion. First, the Court noted that creditors of corporations are already provided with adequate legal protections and safeguards and observed that an additional layer of protection via a direct claim for breach of fiduciary duty would be unnecessary and problematic:

> It is well established that the directors owe their fiduciary obligations to the corporation and its shareholders. While shareholders rely on directors acting as fiduciaries to protect their interests, creditors are afforded protection through contractual agreements, fraud and fraudulent conveyance law, implied covenants of good faith and fair dealing, bankruptcy law, general commercial law and other sources of creditor rights.

Id. at 99 (footnotes omitted). The Court, observing that the recognition of a new direct right to assert breach of fiduciary claims by creditors of corporations that are insolvent or in the zone of insolvency may involve "'using the law of fiduciary duty to fill gaps that do not exist,'" id. at 100 (quoting Production Resources Group L.L. v. NCT Group, Inc., 863 A.2d 772, 790 (Del. Ch. 2004)), stated that

> creditors' existing protections – among which are the protections afforded by their negotiated agreements, their security instruments, the implied covenant of good faith and fair dealing, fraudulent conveyance law, and bankruptcy law – render the imposition of an additional, unique layer of protection through direct claims for breach of fiduciary duty unnecessary.

Gheewalla, 930 A.2d at 100.

Secondly, the Gheewalla Court observed that allowing a direct breach of fiduciary duty claim would create problems with corporate governance, causing uncertainty and potential conflicts of interest for officers and directors:

> Recognizing that directors of an insolvent corporation owe direct fiduciary duties to creditors, would create uncertainty for directors who have a fiduciary

-10-

duty to exercise their business judgment in the best interest of the insolvent corporation. To recognize a new right for creditors to bring direct fiduciary claims against those directors would create a conflict between those directors' duty to maximize the value of the insolvent corporation for the benefit of all those having an interest in it, and the newly recognized direct fiduciary duty to individual creditors. Directors of insolvent corporations must retain the freedom to engage in vigorous, good faith negotiations with individual creditors for the benefit of the corporation.

Id. at 103.

We agree with and adopt the Delaware Supreme Court's reasoning and holding in Gheewalla.[4] Mr. Sanford's rights as an individual creditor of SecureOne were adequately protected by state law and federal bankruptcy law. Although Mr. Sanford did not have a direct breach of fiduciary duty claim, he could have initiated a derivative claim on behalf of all of the insolvent SecureOne's creditors. See Gheewalla, 930 A.2d at 101 (stating that "the creditors of an *insolvent* corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties") (emphasis in original); cf. Intertherm, 569 S.W.2d at 468-69 (derivative action on behalf of all creditors against directors of insolvent corporation). Mr. Sanford's rights as a creditor were further protected by his contractual and security agreements with SecureOne, the implied covenant of good faith and fair dealing, see Intertherm, 569 S.W.2d at 471, federal bankruptcy law, Tennessee's version of the Uniform Fraudulent Transfer Act, Tenn. Code Ann. §§ 66-3-301 to -313 (2004), and the trust fund doctrine. Indeed, Mr. Sanford was able to successfully prosecute and obtain a judgment in this case for those transfers made by SecureOne that the jury found to be fraudulent. Mr. Sanford admits in his appellate brief that "[o]fficers and directors are already prohibited from self-dealing and from preferring their own debt over

___

[4] Courts in several other jurisdictions presented with the same issue have similarly adopted Gheewalla's rationale and ruling. See Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC, ___ F. Supp. 2d ___, 2010 WL 1729172, at *2-3 (D. Conn. Apr. 5, 2010); RSL Commc'ns PLC v. Bildirici, 649 F. Supp. 2d 184, 206 (S.D.N.Y. 2009) (stating that "many courts – including this one – appropriately look to the views of Delaware's learned jurists when analyzing issues of corporate law" and concluding that it "agrees with the Delaware Supreme Court's position in Gheewalla"); see also Donald J. Detweiler & Sandra G.M. Selzer, Scope of Directors' Fiduciary Duties to Creditors: New Delaware Decision Sets Bright-Line Limit, 26-AUG Am. Bankr. Inst. J. 1, *55 (2007) (noting that "[a]s directors and their insolvency professionals navigate these potentially difficult waters, they can rest assured that in financially troubled times the Delaware Supreme Court has provided them with a bright-line rule that will aid them in their decision-making: the creditors of a Delaware corporation that is either insolvent or in the 'zone of insolvency' have no right, as a matter of law, to assert direct claims for breach of fiduciary duty against its directors").

the debt of other creditors" in the absence of a direct breach of fiduciary duty claim. In summary, we hold that as a matter of law, individual creditors of an insolvent corporation have no right to assert direct claims for breach of fiduciary duty against corporate officers and/or directors. The judgment of the Court of Appeals is therefore reversed, and the judgment of the trial court granting the Waughs summary judgment on this claim is reinstated.

### Exclusion of Evidence of Conspiracy to Interfere With Contract

Shortly before trial, the Waughs filed a motion in limine requesting that the trial court refuse to allow Mr. Sanford to put on evidence of conspiracy to commit any underlying torts or bad acts other than fraudulent conveyance and malicious prosecution, because the court had previously granted summary judgment on the rest of Mr. Sanford's claims. Mr. Sanford responded by alleging for the first time, less than two weeks before the trial was scheduled to begin, that the Waughs conspired with the Prows to commit the tort of interference with contract. Mr. Sanford did not plead interference with contract in his complaint or his amended complaint. The trial court granted the Waughs' motion in limine on the grounds that "the plaintiff did not plead the tort of interference with contract and no discovery was exchanged on this cause of action." The Court of Appeals reversed, and the Waughs argue on appeal that it erred in doing so.

In our review of the trial court's decision to admit or exclude evidence, we apply a deferential abuse of discretion standard. Biscan v. Brown, 160 S.W.3d 462, 468 (Tenn. 2005). The trial court's ruling was based on the facts that (1) Mr. Sanford never pled interference with contract, and (2) Mr. Sanford's response to the Waughs' interrogatory requesting him to "[i]dentify with specificity the tort underlying the conspiracy claim" did not include any suggestion of an interference with contract claim, stating instead that "Sanford has asserted claims against Defendants for breach of fiduciary duty, malicious prosecution, fraudulent conveyance and conversion . . . ." Consequently, as the trial court noted, the Waughs did not take any further discovery relating to a potential claim of interference with contract and had no notice of such a potential claim until Mr. Sanford's response to their motion in limine on the eve of trial.

Tennessee Rules of Civil Procedure 8.01 and 8.05 require parties to plead their claims in short, plain, simple, concise, and direct language. As the Court of Appeals correctly noted in this case, "[o]ne purpose of pleadings is 'to give notice of the issues to be tried so that the opposing party can adequately prepare for trial.'" Sanford, 2009 WL 1910957, at *6 (quoting Keisling v. Keisling, 92 S.W.3d 374, 377 (Tenn. 2002)). Similarly, "[p]re-trial discovery is intended to bring out the facts prior to trial, thereby eliminating surprise and enabling the parties to decide what is at issue." Wright v. United Servs. Auto. Ass'n, 789 S.W.2d 911,

915 (Tenn. Ct. App. 1990); accord Se. Fleet Leasing, Inc. v. Gentry, 416 S.W.2d 773, 776 (Tenn. Ct. App. 1966) (stating that the purpose of the discovery process is "to promote the ascertainment of truth by aiding a party in preparing for trial, to prevent surprise and insure as far as possible a trial on the merits, rather than upon fortuitous and unforeseen developments at the trial"). Because Mr. Sanford did not plead a cause of action for interference with contract, and because he failed to include such a tort or bad act in his answer to the interrogatory directly requesting him to state with specificity the underlying torts supporting his conspiracy claim, the Waughs had a reasonable argument that they were unfairly surprised on the eve of trial at Mr. Sanford's last-minute claim of conspiracy to commit interference with contract. Under these circumstances, we hold that the trial court did not abuse its discretion by granting the Waughs' motion in limine. The judgment of the Court of Appeals is reversed on this issue.

### Punitive Damages Claim

At the conclusion of Mr. Sanford's proof, the trial court granted the Waughs' motion for directed verdict on the punitive damages claim, finding that "the plaintiff has not met the clear and convincing burden that is required with [punitive] damages." The final issue on appeal is the correctness of this ruling.

In reviewing a trial court's disposition of a motion for directed verdict, the appellate court must "take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence." Johnson v. Tenn. Farmers Mut. Ins. Co., 205 S.W.3d 365, 370 (Tenn. 2006). To be entitled to an award of punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant "acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992). Consequently, "[w]hen presented with a motion seeking a directed verdict on a punitive damage claim, a court must determine whether there is sufficient evidence, using the clear and convincing evidence standard, to submit the punitive damage claim to the jury." Duran v. Hyundai Motor Am., Inc., 271 S.W.3d 178, 207 (Tenn. Ct. App. 2008); accord Hughes v. Lumbermens Mut. Cas. Co., 2 S.W.3d 218, 227 (Tenn. Ct. App. 1999); Wasielewski v. K Mart Corp., 891 S.W.2d 916, 919 (Tenn. Ct. App. 1994).

This Court has held that because punitive damages "are intended to 'punish a defendant, to deter him from committing acts of a similar nature, and to make a public example of him,'" Goff v. Elmo Greer & Sons Construction Co., 297 S.W.3d 175, 187 (Tenn. 2009) (quoting Huckeby v. Spangler, 563 S.W.2d 555, 558-59 (Tenn. 1978)), they are available in "cases involving only the most egregious of wrongs." Hodges, 833 S.W.2d at 901. We have carefully reviewed the proof presented by Mr. Sanford in this case, and we

agree with the trial court that, taking the strongest legitimate view of the evidence in favor of Mr. Sanford, a reasonable jury could not find by clear and convincing evidence that the Waughs' conduct was intentional, fraudulent, malicious, or reckless to such an extent as to justify punitive damages, nor could it possibly be found to involve the most egregious of wrongs.

Our review of the trial court's directed verdict is limited to the question of whether the evidence supporting Mr. Sanford's malicious prosecution was sufficiently egregious to justify punitive damages, because as the Court of Appeals observed, "[t]he trial court previously ruled that punitive damages were not recoverable on Sanford's fraudulent conveyance claim and Sanford did not appeal this issue." Sanford, 2009 WL 1910957, at *17 n.18. Although there is clearly material evidence supporting the jury's verdict against the Waughs on his malicious prosecution claim, the level of malice required to prove a claim for malicious prosecution is considerably less than the level of malice that must be demonstrated to recover punitive damages. Compare Hodges, 833 S.W.2d at 901 (requiring plaintiff to prove defendant was "motivated by ill will, hatred, or personal spite" to recover punitive damages based on malicious conduct) with Wright Med. Tech., Inc. v. Grisoni, 135 S.W.3d 561, 582 (Tenn. Ct. App. 2001) (stating that the "claimant need not prove ill will or personal hatred, so long as he demonstrates an improper motive" to recover for malicious prosecution). If it were otherwise, any plaintiff winning a malicious prosecution case would automatically be entitled to punitive damages, which is clearly not the law in Tennessee. See Levy v. Franks, 159 S.W.3d 66, 86 (Tenn. Ct. App. 2004) (observing that "punitive damages in the context of malicious prosecution are analyzed as any other claim for punitive damages"); Jarmakowicz v. Suddarth, No. M1998-00920-COA-R3-CV, 2001 WL 196982, at *13 (Tenn. Ct. App. Feb. 28, 2001) (rejecting the notion that "in every case where the underlying cause of action requires a showing of . . . malicious . . . conduct, a directed verdict for defendants on punitive damages is never appropriate where liability for compensatory damages is allowed to go to the jury" and stating that "malicious . . . conduct which warrants an award of compensatory damages does not necessarily qualify for an award of punitive damages."). One important difference lies in the differing standards of proof required to demonstrate a claim for malicious prosecution as opposed to a punitive damages claim. The proof by "clear and convincing evidence" standard is obviously higher than the "preponderance" standard required to win a malicious prosecution case. Hodges, 833 S.W.2d at 901; Goff, 297 S.W.3d at 187. If a plaintiff who successfully states a claim for malicious prosecution were automatically entitled to place a punitive damages claim before the trier of fact, our admonition in Hodges, 833 S.W.2d at 901, recently reiterated in Goff, 297 S.W.3d at 187, that "punitive damages are to be awarded only in the most egregious of cases" would be seriously undermined.

There is no evidence that clearly and convincingly demonstrates that the Waughs' lawsuit against Mr. Sanford alleging misrepresentation was motivated by personal ill will, hatred, or spite. The Waughs voluntarily dismissed their action on advice of their counsel less than a year after it was filed. Mr. Sanford testified that the only document he had "in which either of these folks [the Waughs] said anything nasty or malicious" to him was a check in the amount of $18.75 written by Mrs. Waugh after Mr. Sanford received his $1,560.000 judgment in his action against SecureOne to enforce the Sanford note, with the notation "balance 0" written on the memo line, delivered in an envelope decorated with a red heart-shaped sticker. The check, however, was written in 2006, significantly after the commencement of the malicious prosecution action in April of 2004 and its voluntary dismissal in March of 2005. Finally, in examining the totality of the Waughs' conduct toward Mr. Sanford, the settlement offer made by the Waughs on behalf of SecureOne shortly after they told him they could not afford to continue payments on the Sanford note bears consideration. Mr. Sanford testified that the Waughs offered him between $600,000 and $700,000 in cash, SecureOne's house accounts, and the vehicles owned by the company in settlement of the amount owed under the Sanford note. The house accounts subsequently sold for $330,000. The vehicles sold for approximately $170,000, and the proceeds later went to Mr. Sanford in satisfaction of his judgment against SecureOne and the Prows. Thus, the Waughs made Mr. Sanford an offer of cash and assets worth between $1 million and $1.1 million, in satisfaction of a debt totaling approximately $1,300,000 at that time.

In summary, the proof offered by Mr. Sanford fails to clearly and convincingly demonstrate that the Waughs' conduct in maliciously prosecuting their claim of misrepresentation was motivated by such ill will, hatred, or spite as to render it among "the most egregious of wrongs" justifying an award of punitive damages. The decision of the Court of Appeals on this issue is reversed; the trial court's directed verdict is affirmed and reinstated.

## Conclusion

As a result of our holding that individual creditors of an insolvent corporation have no right to assert direct claims for breach of fiduciary duty against corporate officers and/or directors, the judgment of the Court of Appeals reversing the trial court's summary judgment on Mr. Sanford's direct claim for breach of fiduciary duty is reversed. The judgment of the Court of Appeals reversing the trial court's ruling on the Waughs' motion in limine and

granting a directed verdict on the punitive damages claim is also reversed. Costs on appeal are assessed to the appellee, Michael Sanford, and his surety, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE