# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 20, 2011 Session

## W. TURNER BOONE ET AL. V. LOREN L. CHUMLEY, COMMISSIONER OF THE TENNESSEE DEPARTMENT OF REVENUE

### Appeal from the Chancery Court for Grainger County
#### No. 03-125     Telford E. Forgety, Jr., Chancellor

---

### No. E2010-01692-COA-R3-CV-FILED-NOVEMBER 30, 2011

---

W. Turner Boone and wife, Sally-Bruce M. Boone ("the Taxpayers"), are Tennessee residents who own stock in South Carolina corporations. In 2001, the Taxpayers paid South Carolina income tax of $43,328 based on pass-through income[1] of $623,941. The Taxpayers received dividend distributions of $204,988 on the same income. They filed a 2001 Tennessee Hall Income Tax return reporting the dividends with a resulting tax of $12,288, against which they claimed a credit for a like amount based upon their payment of the South Carolina income tax. Their claimed credit is based upon a deduction allowed by statute for "tax paid to [another] state . . . provided, that there exists a tax credit reciprocity agreement between Tennessee and the other state." Tenn. Code Ann. § 67-2-122 (2011). Loren L. Chumley, Commissioner of the Tennessee Department of Revenue ("the Commissioner") declined to allow the credit. She gave notice of an outstanding tax liability for 2001 in the amount of $15,017.93, including penalties and interest. The Taxpayers paid the assessment under protest and filed this action against the Commissioner after they demanded and were denied a refund. The trial court upheld the Commissioner's denial. The Taxpayers appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

---

[1]Under the Internal Revenue Code, income from a Subchapter S corporation is "passed through" and taxed to the individual stockholders rather than the corporation. South Carolina treats as income the same passed-through earnings.

Charles W. Van Beke, Knoxville, Tennessee, for the appellants, W. Turner Boone and wife, Sally-Bruce M. Boone.

Robert E. Cooper, Jr., Attorney General and Reporter; Joseph F. Whalen, Associate Solicitor General; and Gregory O. Nies, Assistant Attorney General, Tax Division, Nashville, Tennessee, for the appellee, Loren L. Chumley, Commissioner of the Tennessee Department of Revenue.

**OPINION**

I.

A.

This case was tried on stipulated facts. We repeat the parties' stipulation, with limited and insignificant editorial changes:

> In 2001, Plaintiffs, W. Turner Boone and Sally-Bruce M. Boone, were residents of the State of Tennessee.
>
> For the 2001 calendar year, Turner Boone owned stock in Exchange Investment Corporation ("Exchange") and Regis Milk Co. ("Regis") and Sally Boone owned stock in Exchange.
>
> Exchange and Regis were incorporated in . . . South Carolina and had their principal places of business in South Carolina.
>
> For the 2001 calendar year, Exchange and Regis elected, for federal income tax purposes, to be treated as S Corporations under 26 U.S.C. § 1362(a).
>
> Exchange and Regis filed State of South Carolina "S" Corporation Income Tax Returns for 2001 on which Exchange and Regis were allowed a deduction for income "taxed to shareholders of the S Corporation[s]."
>
> [Taxpayers'] pro-rata share of the income from Exchange and Regis for 2001 that was subject to South Carolina income tax was $623,941. As reported on the [the Taxpayers'] 2001 South Carolina Income Tax Return, the South Carolina tax due on [the

Taxpayers'] pro-rata share of the income from Exchange and Regis was $43,328, which [the Taxpayers] paid. The maximum South Carolina individual income tax rate in 2001 was 7%.

In 2001, [the Taxpayers] received dividend distributions from Exchange and Regis totaling $204,988.

* * *

On April 15, 2002, [the Taxpayers] filed a Tennessee Individual Income Tax Return for the taxable year beginning January 1, 2001 and ending December 31, 2001 (the "2001 Hall Income Tax Return"). The individual income tax rate in Tennessee in 2001 was 6%.

. . . The total amount of Tennessee Hall income tax due, after claiming the $2,500 exemption allowed pursuant to Tenn. Code Ann. § 67-2-104 (a), was $12,228.

[The Taxpayers] claimed a credit for taxes paid to South Carolina in the amount of $12,228 on their 2001 Hall Income Tax Return. As a result of claiming the credit, the [Taxpayers'] 2001 Hall Income Tax Return, as filed, stated no tax was due.

[The Taxpayers] claimed a credit for the full amount due because [they] paid South Carolina Income tax on their entire distributive share of the income of Exchange and Regis, not just the $204,988 that was distributed to them, and because the South Carolina tax rate exceeded the Tennessee tax rate.

Tenn. Code Ann. § 67-2-122 states: "A resident individual who is a shareholder of a Subchapter S corporation, which is incorporated and doing business in another state, may deduct from the tax otherwise due under this chapter the tax paid to the other state as a result of such income, distributions or dividends; provided that there exists a tax [credit] reciprocity agreement between Tennessee and the other state."

Tennessee does not have an express, written income tax reciprocity agreement with South Carolina.

The Code of Laws of South Carolina § 12-6-3400(A)(1) provides: "Resident individuals are allowed a credit against the taxes imposed by this chapter for income taxes paid to another state on income from sources within that state which is taxed under both this chapter and the laws of that state regardless of the taxpayer's residence."

. . . [The Commissioner sent] a Notice of Outstanding Tax Liability ("Notice") to [the Taxpayers], assessing tax due in the amount of $12,228.00, penalty in the amount of $2,445.60, and interest in the amount of $344.33, for a total assessment of $15,017.93 as of the date of the Notice.

On August 6, 2002, [the Taxpayers] paid the assessment . . . under protest. The [Commissioner] concedes that the assessment at issue in this suit was paid in full.

On March 24, 2003, [the Taxpayers] filed a timely Claim for Refund in the amount of $15,017.93.

By letter dated April 21, 2003, the [Commissioner] denied [the] . . . Claim for Refund.

(Paragraph numbering and record citations omitted.)

B.

The Taxpayers timely filed this action naming the Commissioner as the defendant. They allege that their refund request was improperly denied because, according to them, a reciprocity agreement exists between Tennessee and South Carolina by virtue of the respective state statutes, each of which allows a credit for taxes paid to a sister state. They also allege that the Hall Income Tax, as applied by the Commissioner, violates the Commerce Clause of the United States Constitution because it taxes income that does not have a substantial nexus to this state and is not fairly apportioned.

The trial court entered a judgment upholding the tax liability and denying the claim for refund. The judgment states the court's rationale as follows:

Based upon the Court's determination that statutory provisions granting tax credits are to be strictly construed and do not arise

-4-

by implication, and the admission that there is no express tax reciprocity agreement with South Carolina, the Court rejected the [Taxpayers'] argument that there was an implied tax reciprocity agreement between Tennessee and South Carolina. The Court further found that the Tennessee and South Carolina individual income tax laws are different in general principle, character, and the sources of income taxed. For these reasons the Court concluded the [Taxpayers] were not entitled to a tax credit.

Additionally, the Court found that Tennessee's tax assessment here does not violate the provisions of the Commerce Clause of the United States Constitution because income received by a resident from intangible investments outside of his home state, such as dividends from stock in a foreign corporation, constitute income from within the state of the individual's residency. Here, there was no interstate commerce involved.

II.

The Taxpayers timely filed a notice of appeal. The principal issues they raise, stated verbatim from their brief[2], are:

> Whether [the] Taxpayers are entitled to a credit for taxes paid to South Carolina on their income from South Carolina S Corporations pursuant to Tenn. Code Ann. § 67-2-122.

> Whether Tennessee's tax upon distributions from the foreign S Corporations violates the Commerce Clause of the United States Constitution.

III.

This case presents only questions of law. Accordingly, our scope of review is *de novo*, with no presumption of correctness attaching to the trial court's judgment. **Sanford v. Waugh & Co.**, 328 S.W.3d 836, 843 (Tenn. 2010).

---

[2]We have omitted the detailed sub-issues, the thrust of which is to state the arguments underlying each of the two main issues. We will address the arguments as necessary in the course of our analysis.

IV.

A.

Since there is no written tax reciprocity agreement between the Commissioner and his counterpart in South Carolina, the key issue is whether such an agreement can and should be implied in this case. The Commissioner argues that to imply an agreement is to violate the general rule that tax credits and exemptions are to be strictly construed against the taxpayer. *See*, *e.g.*, **AFG Indus., Inc. v. Cardwell**, 835 S.W.2d 583, 584-85 (Tenn. 1992); *see also* **Herald v. Johnson**, 19 S.W.3d 241, 244 (Tenn. Ct. App. 2000). The Commissioner also argues that any such agreement would be unworkable because the Hall Income Tax is very different in character from the general income tax imposed by South Carolina. *See* 71 Am. Jur. 2d, *State and Local Taxation* § 411 (2001). The Taxpayers argue that the rule of strict construction is not applicable to this case because, first, the fact of a credit is explicit; it is only the reciprocity agreement that must be implied; and second, that where a statutory provision such as Tenn. Code Ann. § 67-2-122 is enacted for the sole purpose of avoiding the taxation of the same income by two different states, it must be construed in a way that accomplishes that goal. *See, e.g.*, **International Harvester Co. v. Carr**, 466 S.W.2d 207, 213 (Tenn. 1971).

We conclude that the differences in the two tax schemes is dispositive, not because there must be some similarity between the taxing statutes of the sister states, but rather because we do not believe the General Assembly intended to enact a reciprocity agreement with a sister state *under which Tennessee could not receive a reciprocal benefit*. The core ingredient of a reciprocity agreement between taxing authorities of sister jurisdictions is an agreement by each jurisdiction to provide or forego certain benefits if the other jurisdiction will make similar concessions. See **Clement v. Stone**, 15 So.2d 517, 522 (Miss. 1943)("[O]ur Legislature proposed to our sister states that if they would exempt our citizens from an income tax that their own citizens are required to pay, then Mississippi would exempt their citizens from the payment of the income tax that our citizens are required to pay . . .").

**Clement** is the Commissioner's primary authority for the argument that no reciprocity agreement can exist where the tax schemes are different. The core issue in **Clement** was whether a Tennessee resident who operated a farm in Mississippi could avoid paying income

tax to Mississippi on the farm income by claiming an exemption based on Mississippi's reciprocity statute[3]. *Id*. at 520. The court held

> that for a citizen of a state other than the State of Mississippi to be exempt from an income tax on all income received from within the State of Mississippi, the state of which he is a citizen must have a general income tax law at least similar in principle to our own, as to the character and source of income taxed, in order for such non-resident to be entitled to the exemption on the ground of reciprocity, or to avoid double taxation.

*Id*. at 522. The Mississippi court further held that since Tennessee did not impose an income tax that reached the Mississippi farm earnings, and did not extend to the citizens of Mississippi any exemption such as the exemption being claimed on the Mississippi farm earnings, the farmer could not claim the exemption. *Id*. In other words, Mississippi's reciprocity statute did not require its tax officials to make concessions in situations where it had nothing to gain. The result in *Clement* is obviously correct because it prevented the farmer, who had paid no Tennessee taxes, from also avoiding paying Mississippi taxes. *See, id*. at 520.

While the result reached by the trial court in the present case is not as intuitively correct as in *Clement*, we believe that the general rationale of *Clement* as we have restated it is sound, and that it requires denial of the credit the Taxpayers seek in the present case. Our conclusion is based upon our comparison of the taxing schemes of the two states. By all accounts, including the stipulation of facts, South Carolina imposes a general income tax much akin to the federal system. South Carolina recognizes a Subchapter S election and taxes a corporation's shareholders, rather than the corporation, on the former's pro rata share of the corporate income. The percentage rate is slightly higher than the Tennessee Hall Income Tax rate of 6%, but it is based on the corporation's earnings regardless of the amount of cash, if any, that is actually distributed to the stockholders. South Carolina's tax code has a reciprocity provision which states:

---

[3]The Mississippi statute

> reads as follows: "A citizen of a state other than the state of Mississippi which levies an income tax shall be exempt from the payment of an income tax on all income received from within the state of Mississippi if the state of which he is a citizen extends the same exemption to a citizen of this state."

*Clement*, 15 So.2d at 519 (quoting statute).

Resident individuals are allowed a credit against the taxes imposed by this chapter for income taxes paid to another state on income from sources within that state which is taxed under both this chapter and the laws of that state regardless of the taxpayer's residence.

Code of Laws of South Carolina § 12-6-3400(A)(1).

Tennessee does not have a general income tax. Tennessee's limited income tax – the Hall Income Tax – is codified at Tenn. Code Ann. §§ 67-2-101 *et seq.* (2011). It is only imposed on residents of Tennessee: "[a]ny person who has a legal domicile in Tennessee [including] . . . every person who maintains a place of residence in Tennessee for more than six (6) months in the tax year. . . ." § 67-2-101(5). The operative provision is § 67-2-102, which states:

An income tax in the amount of six percent (6%) per annum shall be levied and collected on incomes derived by way of dividends from stocks or by way of interest on bonds of each person, partnership, association, trust and corporation in the state of Tennessee who received, or to whom accrued, or to whom was credited during any year income from the sources enumerated in this section, except as otherwise provided in this chapter.

A list of exemptions is found at Tenn. Code Ann.§ 67-2-104. There is no exemption for income from Subchapter S corporations. The "reciprocity" provision is at Tenn. Code Ann. § 67-2-122. We have quoted it as part of the stipulation and will not repeat it here.

The key problem with implying a reciprocity agreement with South Carolina from the two statutes is that there is no reciprocal benefit to Tennessee. We must examine what would happen "if the shoe were on the other foot," so to speak, to determine whether there is reciprocity in fact. A mirror image of the facts in this case would involve a Tennessee Subchapter S corporation with a South Carolina shareholder to whom the corporation paid dividends of $204,988. Under the Hall Income Tax, Tennessee would not tax the South Carolina shareholder's pro rata share of the corporate earnings (being $623,941). Furthermore, Tennessee would not tax the dividends of $204,988 because they were not paid to a Tennessee resident.

The Taxpayers offer, in a footnote to their brief, some hypothetical facts wherein a South Carolina resident also maintains a residence in Tennessee for part of the year, as a

scenario where Tennessee could possibly tax a share of the dividends paid to a South Carolina resident and the South Carolina resident could possibly claim some credit or deduction for the tax payment to Tennessee. We are dealing here with whether we can and should interpret Tenn. Code Ann. § 67-2-122 in such a way as to imply a reciprocal agreement between Tennessee taxing authorities and South Carolina taxing authorities. In our opinion, a remotely possible set of facts, which facts are not present in the case before us, is far too weak a thread to hold up the Taxpayers' argument for an implied agreement.

The Taxpayers also argue that, if the pertinent Tennessee statute is not interpreted to allow reciprocity with states that have tax schemes different from Tennessee, the statute is rendered a nullity because all other states' tax schemes are different from Tennessee. We believe this argument proves too much. Our decision must be based upon the facts of the present case instead of conjecture about whether there is or is not a state with a tax scheme that might readily provide reciprocity in fact with Tennessee. We reiterate that we are being asked to imply an agreement that, from the perspective of the facts of the present case, does not make economic sense for the State of Tennessee. Obviously, we would have a much different case if the Commissioner had negotiated an express reciprocity agreement with South Carolina.

In short, under the facts of the present case, there is no reciprocity in fact. The reciprocity agreement that the Taxpayers urge us to imply would never generate revenue for the State of Tennessee at the expense of the State of South Carolina; it would, by giving the Taxpayers a credit against their Tennessee tax obligation, only deprive Tennessee of revenue. For this reason, we must reject the Taxpayers' argument that they are entitled to claim a credit equal to their Tennessee taxes based on an implied reciprocity agreement.

B.

We must now consider whether Tennessee's taxing of dividends paid to a Tennessee resident by South Carolina corporations violates the Commerce Clause of the United States Constitution. In general terms, the Commerce Clause, as interpreted by the United States Supreme Court, protects the flow of interstate commerce from state restrictions that impede the flow of commerce across state borders. *See, e.g.*, ***Oklahoma Tax Comm'n v. Jefferson***, 514 U.S. 175, 180, 115 S.Ct. 1331, 1335-36 (1995). This includes protection against discriminatory taxes. *Id*. A state can impose a tax that has some arguable impact on interstate commerce, but the tax must not overstep the nexus of the commerce to the taxing state. ***Complete Auto Transit, Inc. v. Brady***, 430 U.S. 274, 287, 97 S.Ct. 1076, 1083 (1977). The essence of the Taxpayers' argument is that the payments to them from Subchapter S corporations is nothing but the result of commerce that has little or no definite nexus to Tennessee. We disagree.

It has long been accepted that income to a person from his or her intangible investments outside the state, such as dividends from stock in a foreign corporation, constitutes income from within the state of the person's residence. 85 C.J.S. *Taxation* § 1858 (2010). "The command of the state over the owner, the obligations which domicile creates, the practical necessity of associating intangibles with the person of the owner at his domicile since they represent only rights which he may enforce against others – these are the foundation for the jurisdiction of the domiciliary state to tax." ***Central Hanover Bank & Trust v. Kelly***, 319 U.S. 94, 96-97, 63 S.Ct. 945, 947 (1943). The taxation of intangibles by the state where the owner lives "has been uniformly upheld." ***Lawrence v. State Tax Comm'n of Mississippi***, 286 U.S. 276, 280, 52 S.Ct. 556, 557 (1932). Tennessee's jurisdiction to collect the Hall Income Tax is founded upon these principles. "[T]he incidence of the [Hall] income tax is upon the stockholder." ***Fidelity-Bankers Trust Co. v. McCanless***, 181 S.W.2d 747, 749 (Tenn. 1944). Once the board of directors declares the dividend, "the income then accrues to the stockholder individually." ***Id***. at 750.

The Taxpayers attempt to distinguish this authority by arguing that the corporations' elections to be treated as Subchapter S corporations changes everything; they contend it changes what would be personal income of the shareholders to income of the corporation that is simply passed through to the shareholders for federal taxing purposes. ***Agley v. Tracy***, 719 N.E.2d 951, 954 (Ohio 1999). In our view, the distinction is based on semantics that are not sustainable. For example, one of the cases the Taxpayers rely on, as quoted in their brief, states that the corporate income is "taxed at the shareholder level as if the shareholder earned the income in his or her individual capacity." ***Valentino v. Franchise Tax Board***, 87 Cal. App. 4 th 1284, 1291-92, 105 Cal. Rptr.2d 304 (2001). This language, in our opinion, is entirely consistent with taxing whomever ends up with the money. If we are forced into the realm of semantic fictions, we believe the fiction that sustains the presumption of constitutionality is the preferred approach.

Also, even if the Taxpayers are correct that the corporate income as reflected on South Carolina tax returns retains its status as corporate income by virtue of the Subchapter S election, that is not what the Commissioner is taxing in the present case. The Taxpayers' pro-rata share of the corporate income – the income that passed directly from the corporations to the Taxpayers – was $623,941. The total dividends declared by the boards of the two separate corporations was $204,988. It was upon this latter amount that the Taxpayers paid the Tennessee tax. While it may be true that the dividends are some part of the money the corporations made that was reportable as income, the dividends paid to the Taxpayers are by no means the same as the income of the corporation. We cannot believe that allowing the Commissioner to impose a tax upon dividends declared elsewhere and received in Tennessee will have a forbidden impact on interstate commerce. Even if there is some remote impact on interstate commerce in taxing dividends from earnings of a

corporation that is engaged in interstate commerce, we believe that the nexus of the Taxpayers' residence here is sufficient to support a tax that is "apportioned" according to dividends paid in Tennessee as opposed to total corporate earnings. *See* ***Complete Auto Transit***, 430 U.S. at 289(four part test that includes "nexus" to taxing state and "fairly apportioned"). Even interstate commerce must pay its fair share of state taxes. ***D.H. Holmes Co. v. McNamara***, 486 U.S. 24, 31, 108 S.Ct. 1619, 1623 (1988). Therefore, we hold that there is no constitutional impediment to the imposition and collection of the Tennessee tax.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellants, W. Turner Boone and wife, Sally-Bruce M. Boone. This case is remanded, pursuant to applicable law, for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., JUDGE